SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JILL M. PIETRINI (Cal. Bar No. 138335)
jpietrini@sheppardmullin.com
PAUL A. BOST (Cal. Bar No. 261531)
pbost@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  (310) 228-3700 / Facsimile: (310) 228-3701

Attorneys for Defendants and Counter-claimant

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| BETWEEN THE LINES PRODUCTIONS, LLC a California limited liability company,<br><br>        Plaintiff,<br><br>      v.<br><br>LIONS GATE ENTERTAINMENT CORP., a British Columbia corporation, and SUMMIT ENTERTAINMENT, LLC, a Delaware limited liability company,<br><br>        Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 2:14-cv-00104-R (PJWx)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR COSTS PURSUANT TO FED.R.CIV.P. 41(d)**<br><br>Date:      May 19, 2014<br>Time:     10:00 a.m.<br>Location:  Spring St., Courtroom 8<br>Judge:    Hon. Manuel L. Real |

# **<u>TABLE OF CONTENTS</u>**

<u>**Page**</u>

I.  INTRODUCTION ....................................................................................... 1

II.  RELEVANT FACTUAL BACKGROUND ...................................................... 2

III.  THE COURT SHOULD ORDER PLAINTIFF AND/OR ITS
COUNSEL TO PAY DEFENDANTS THEIR EXPENSES AND
ATTORNEYS' FEES EXPENDED IN THE FIRST ACTION THAT
ARE NOT USEFUL IN THE SECOND ACTION AND STAY THESE
PROCEEDINGS PENDING COMPLIANCE .................................................. 6

    A.  Plaintiff's Conduct Satisfies the Conditions of Fed.R.Civ.P.
41(d) and the Circumstances of the Case Warrant an Award of
Costs and Attorneys' Fees ....................................................................... 7

    B.  Defendants Are Entitled to Expenses and Attorneys' Fees in the
Amount of $52,303.27 ............................................................................ 10

        1.  Defendants' Expenses ................................................................... 11

        2.  Defendants' Attorneys' Fees ........................................................ 11

            a.  Defendants' Attorneys' Hourly Rates Are
Reasonable ......................................................................... 12

            b.  Defendants' Attorneys Expended a Reasonable
Number of Hours ................................................................ 13

    C.  The Court Should Stay the Proceeding .................................................. 16

IV.  CONCLUSION ........................................................................................... 17

-i-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Aloha Airlines, Inc. v. Mesa Air Group, Inc.*
   2007 U.S. Dist. LEXIS 97678 (D. Haw. July 20, 2007) ............................. 10, 12

*Blackwell v. Foley*
   724 F. Supp.2d 1068 (N.D. Cal. 2010) ................................................................. 13

*Blum v. Stevenson*
   465 U.S. 886, 104 S.Ct. 1541 (1984) ................................................................. 12

*Espinosa v. Marshall*
   2007 WL 214439 (E.D. Cal. Jan. 26, 2007) ..................................................... 17

*Esquivel v. Arau*
   913 F. Supp. 1382 (C.D. Cal. 1996) ....................................................... 7, 8, 9, 10

*Holt v. Kormann*
   2012 WL 5829864 (C.D. Cal. Nov. 15, 2012) ................................ 11, 12, 13, 17

*Jurin v. Google, Inc.*
   695 F. Supp.2d 1117 (E.D. Cal. 2010) ............................................................ 7, 8

*Moreno v. City of Sacramento*
   534 F.3d 1106 (9th Cir. 2008) ........................................................................... 13

*Purdue v. Kenny A.*
   559 U.S. 542, 130 S.Ct. 1662 (2010) ................................................................ 12

*Simmonds v. Geeknet, Inc.*
   2013 U.S. Dist. LEXIS 17560 (W.D. Wash. February 7, 2013) ...... 7, 8, 9, 10, 15

<u>Statutes</u>

28 U.S.C. § 1404 ......................................................................................................... 2

<u>Other Authorities</u>

Fed.R.Civ.P. 12(b)(6) ....................................................................................... 2, 3, 4, 5

Fed.R.Civ.P. 15(a)(1)(B) ............................................................................................. 3

1

## TABLE OF AUTHORITIES
### (continued)

2

3

**Page(s)**

4

Fed.R.Civ.P. 26(f) ........................................................................13, 14, 16

5

Fed.R.Civ.P. 41(a)(1) ..........................................................................5, 10

6

Fed.R.Civ.P. 41(d) ...........................................1, 6, 7, 8, 9, 10, 16, 17

7

Local Rule 5-3.1.1 .......................................................................................3

8

Local Rule 5-4.2 ..........................................................................................3

9

Local Rule 37 ...............................................................................................5

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.     INTRODUCTION

It is manifestly unfair for Plaintiff Between the Lines Productions, LLC ("Plaintiff") to file a lawsuit in New York, compel defendant Lions Gate Entertainment Inc.'s ("Lionsgate") and defendant and counter-claimant Summit Entertainment, LLC's ("Summit") (collectively, "Defendants") disbursement of expenses and attorneys' fees in defense thereof, and then voluntarily dismiss the case after it was transferred to California, only to file a nearly identical case immediately thereafter back in New York.  Clearly, Defendants should not have to bear costs expended for work in the first action which they cannot use in the second action.  <u>Fed.R.Civ.P. 41(d), which gives the Court discretion to award Defendants their costs and attorneys' fees rendered useless by Plaintiff's dismissal and subsequent recommencement of an action, was created specifically to rectify such potential injustices.</u>  The awarding of Defendants' expenses and fees is particularly appropriate in this case as Plaintiff and its counsel cannot establish any justifiable reasons for its/their actions.  Instead, after racking up significant costs for Defendants due to its vexatious actions which had nothing to do with the merits of the parties' dispute, Plaintiff voluntarily dismissed its first action and immediately thereafter commenced the second in a blatant attempt to forum shop (for the second time), try the case before another judge, and avoid hearing on Defendants' pending motions to dismiss and compel.

Defendants' costs, including attorneys' fees, expended in the First Action which resulted in work not useful to the Second Action, total $52,303.27.  As set forth below and in the accompanying declaration of Paul Bost, which includes copies of Defendants' billing records, Defendants' costs are reasonable given the amount of work generated by Plaintiff's and its counsel's vexatiousness and litigiousness, as described in greater detail below.  The amount of Defendants' attorneys' fees is reasonable in light of the fees charged by attorneys of comparable skill and experience, and the quantity of Defendants' attorneys' work is reasonable

-1-

1  in relation to the tasks at issue.

2  **II.     RELEVANT FACTUAL BACKGROUND**

3        Plaintiff seeks a declaration from the Court that its motion picture *Twiharder*

4  does not infringe Summit's copyrights in and trademarks associated with the motion

5  picture *Twilight* and its sequels (the "*Twilight* Motion Pictures").  Plaintiff initially

6  asserted this primary claim in a 219-page complaint filed in the Southern District of

7  New York on May 28, 2013, which was assigned to the Hon. Jed S. Rakoff and

8  given case number 1:13-cv-03584-JSR (the "First Action").  In that complaint,

9  Plaintiff asserted the following claims:  (1) declaratory judgment that *Twiharder*

10  constituted a fair use of the *Twilight* Motion Pictures; (2) violation of the Digital

11  Millennium Copyright Act ("DMCA"); (3) violation of the Sherman Anti-trust Act;

12  and (4) cancellation of certain of Summit's TWILIGHT trademarks.  Plaintiff also

13  sought certification of challenge to the constitutionality of the Copyright Act's fair

14  use test.  [Dkt No. 1 of the First Action.]  On June 28, 2013, Defendants filed a

15  motion to transfer venue of the case to the Central District of California under 28

16  U.S.C. § 1404.  [Dkt. No. 11 of the First Action.]  On July 18, 2013, and pursuant to

17  the scheduling order issued by Judge Rakoff [Dkt No. 17 of the First Action],

18  Defendants served Plaintiff with its first set of requests for production of documents

19  and first set of interrogatories.  (Bost Decl. ¶ 2.)  On July 30, 2013, Judge Rakoff

20  granted Defendants' motion to transfer [Dkt. No. 29 of the First Action], and the

21  action was transferred to the Central District of California, where it was assigned to

22  the Hon. Margaret M. Morrow.  Shortly thereafter, the parties entered a stipulation,

23  which, among other things, extended Defendants' deadline to respond to Plaintiff's

24  complaint and to mutually withdraw their respective first sets of interrogatories.

25  [Dkt No. 30 of the First Action.]  (Bost Decl. ¶ 3, Ex. A.)

26        Once the action was transferred to the Central District of California,

27  Defendants filed two motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).  Plaintiff

28  did not file an opposition to Defendants' first motion, which sought dismissal of

1   Plaintiff's antitrust, trademark cancellation, and DMCA claims. [Dkt. No. 39 of the

2   First Action.] Instead, Plaintiff filed a 186-page first amended complaint ("FAC")

3   pursuant to Fed.R.Civ.P. 15(a)(1)(B). In its FAC, Plaintiff voluntarily dismissed its

4   trademark cancellation and DMCA claims and restyled its original declaratory

5   judgment claim into five separate declaratory judgment claims, namely, a copyright

6   First Amendment declaratory judgment claim, a copyright misuse declaratory

7   judgment claim, a copyright fair use declaratory judgment claim, a trademark statute

8   of limitations declaratory judgment claim, and a Lanham Act laches declaratory

9   judgment claim. [Dkt. No. 46 of the First Action.] Plaintiff refused to serve

10  Defendants with a copy of the FAC despite the clear instruction of Local Rule 5-

11  3.1.1 requiring "[d]ocuments presented to the Clerk for filing or lodging in paper

12  format pursuant to L.R. 5-4.2 [to] be served in accordance with [FRCP] 5." (Bost

13  Decl. ¶ 6, Ex. B.)

14      Despite Plaintiff's refusal to properly serve them, Defendants filed their

15  second motion to dismiss on October 22, 2013, which again sought dismissal of

16  Plaintiff's antitrust claim and set hearing for December 2, 2013. [Dkt. No. 52 of the

17  First Action.] Plaintiff never filed an opposition to this motion. Instead, Plaintiff

18  launched the series of filings – none of which is related to the underlying merits of

19  the parties' dispute or useful to Defendants in the present action – described

20  immediately below:

21          • On October 25, 2013, Plaintiff filed an application for entry of default

22              despite Defendants' then-pending Fed.R.Civ.P. 12(b)(6) motion and its

23              failure to serve Defendants with its FAC. [Dkt. Nos. 55 and 55-1 of the

24              First Action.] The Clerk's office forwarded the application to Judge

25              Morrow, because it was unable to determine based on the record if

26              default should be entered. [Dkt. No. 56 of the First Action.]

27          • On November 6, 2013, Plaintiff filed a statement of objections to the

28              Clerk's forwarding of the application for default to Judge Morrow.

-3-

[Dkt. No. 58 of the First Action.]

- Next, on November 12, 2013, Plaintiff filed an application to the Clerk of Court protesting the December 2, 2013 hearing date noticed for Defendants' Fed.R.Civ.P. 12(b)(6) motion to dismiss, despite the fact that at the parties' scheduling conference before Judge Morrow, Defendants were granted leave to have their motion heard on December 2, 2013.  [Dkt. No. 61 of the First Action.]

- Plaintiff then filed a statement of objections – not an opposition – to Defendants' motion to dismiss and to Judge Rakoff's July 30, 2013 order transferring venue of the First Action to the Central District of California.  [Dkt. No. 63 of the First Action.]

- After Judge Morrow issued an order making it clear that hearing on Defendants' motion to dismiss was scheduled for December 2, 2013, Plaintiff filed a motion to strike Judge Morrow's "counterfeit" order. [Dkt. Nos. 64 and 64-1 of the First Action.]

- Plaintiff then filed a statement of objections to Judge Morrow's Scheduling Order and the transcript of the Scheduling Conference. [Dkt. No. 66 of the First Action.]  Among its many impassioned objections to Judge Morrow's procedures and handling of the case thus far, Plaintiff stated that it "has reasonable grounds to believe that upon transfer of venue from New York, this civil action was not randomly assigned to the presiding Honorable Judge." *Id*.  (All capital letters in original.)

On November 26, 2013 and in receipt of Plaintiff's numerous filings, Judge Morrow issued an order construing Plaintiff's filings as a motion to recuse, which was subsequently randomly assigned to Judge Beverly Reid O'Connell.  [Dkt. Nos. 67 and 69 of the First Action.]  On December 3, 2013, Judge O'Connell issued an order denying Plaintiff's motion to recuse.  [Dkt. No. 70 of the First Action.]  Judge

Morrow subsequently ordered hearing on Defendants' Fed.R.Civ.P. 12(b)(6) motion to dismiss for January 13, 2014 and ordered Plaintiff to file its opposition by December 13, 2013.  [Dkt. No. 71 of the First Action.]

Also, on December 6, 2013, Defendants filed a motion to compel Plaintiff's service of written responses without objections and production of responsive documents to their first set of requests for production.  [Dkt. No. 72 of the First Action.]   As noted above, Defendants served their first set of requests for production on July 18, 2013, but Plaintiff did not bother to serve responses to them until November 5, 2013, which were replete with objections.  Also, Plaintiff refused to participate in the joint stipulation process set forth in Local Rule 37, forcing Defendants to prepare both a joint stipulation and a motion to compel.  (Bost Decl. ¶¶ 4-5.)

Ultimately, while Defendants' motion to compel was pending, after Plaintiff's application for entry of default and motion to recuse were denied, and on the day its opposition to Defendants' second motion to dismiss was due, Plaintiff voluntarily dismissed the First Action without prejudice pursuant to Fed.R.Civ.P. 41(a)(1). [Dkt. No. 73 of the First Action.]

The very next business day, December 16, 2013, Plaintiff re-filed its case – the present action – again in the Southern District of New York (the "Second Action").  Plaintiff's complaint in the Second Action included three claims for relief, namely, a copyright non-infringement declaratory judgment claim, a trademark non-infringement/non-dilution declaratory judgment claim, and a prima facie tort claim under the New York common law.  [Dkt. No. 1.]  In its Civil Case Cover Sheet, Plaintiff noted that this case was related to the First Action.[1]  The

---

[1]   Although Plaintiff's complaint in the Second Action does not include antitrust or trademark cancellation claim, Plaintiff suggests that it still intends to seek such relief in the Second Action.  *See* Plaintiff's Memorandum of Law in Support of its Motion to Dismiss Defendants' Counterclaims, Dkt. No. 25, p. 27 ("BTL intends to

1   Second Action was again assigned to Judge Rakoff.  Defendants informed Judge

2   Rakoff of the status of the First Action, which he transferred to this District, in a

3   letter dated December 30, 2013 and requested that Plaintiff and its counsel be

4   sanctioned.  (Bost Decl. ¶ 7, Ex. C.)  At the initial conference held on January 6,

5   2014, Plaintiff admitted that this action was related to its prior action:

> **The Court:**   Let me make sure I understand what's happened in this case.  When the related case was first before this court, I transferred it to the Central District of California.  Then, plaintiff, you, dismissed the California action and re-filed the action in New York.  Do I have that right?
>
> **Plaintiff's counsel:**   Correct.  It's not quite the same action, but it's certainly similar.

11   (Bost Decl. ¶ 8, Ex. D.)

12         Judge Rakoff *sua sponte* transferred the action – again – to the Central

13   District of California on the grounds that it was "a blatant case of attempting to

14   evade the transfer of this case to California."  *Id*.  Judge Rakoff further noted on the

15   record that it was "only because [Defendants' counsel] is not here will I not hear

16   argument on whether sanctions should be imposed on [P]laintiff's counsel."  *Id*.

17   After transfer of the matter to this Court and the Hon. Judge Real, Plaintiff filed

18   with Judge Rakoff a motion to certify his transfer orders in the First and Second

19   Actions for interlocutory appeal to the Second Circuit Court of Appeals.  Judge

20   Rakoff denied Plaintiff's motion.  [Dkt No. 20.]

21   **III.   THE COURT SHOULD ORDER PLAINTIFF AND/OR ITS COUNSEL TO PAY DEFENDANTS THEIR EXPENSES AND ATTORNEYS' FEES EXPENDED IN THE FIRST ACTION THAT ARE NOT USEFUL IN THE SECOND ACTION AND STAY THESE PROCEEDINGS PENDING COMPLIANCE**

24         Fed.R.Civ.P. 41(d) provides the following:

25               Costs of a Previously Dismissed Action.  If a plaintiff

26   _____

27   petition the Court, or the appropriate executive agency, to cancel Lions Gate's trademarks and copyrights associated with The Twilight Saga on account of its

28   antitrust violations.")

-6-

1
2
3
4

> who previously dismissed an action in any court files an
> action based on or including the same claim against the
> same defendant, the court:
> (1) may order the plaintiff to pay all or part of the costs
> of that previous action; and
> (2) may stay the proceedings until the plaintiff has
> complied.

5   This Rule "is an expression of the Court's inherent power to protect defendants from

6   the harassment of repeated lawsuits by the same plaintiff on the same claims." *Jurin*

7   *v. Google, Inc.*, 695 F. Supp.2d 1117, 1123 (E.D. Cal. 2010) (motion for costs,

8   which included attorneys' fees, granted).

9        In order to determine if a plaintiff should be ordered to pay a defendant's

10   costs in a prior action, "the court should simply assess whether a plaintiff's conduct

11   satisfies the requirement of [Fed.R.Civ.P.] 41(d), and whether the circumstances of

12   the case warrant an award of costs to prevent prejudice to the defendant." *Esquivel*

13   *v. Arau*, 913 F. Supp. 1382, 1388 (C.D. Cal. 1996).  Courts have looked to a number

14   of factors to guide their discretion in whether to award costs pursuant to

15   Fed.R.Civ.P. 41(d):

16
17
18
19
20
21

> (1) whether there is any indication of vexatious intent or
> forum shopping; (2) whether dismissal was an attempt to
> gain a tactical advantage; (3) whether dismissal was
> designed to avoid court-imposed deadlines or other
> unfavorable rulings; (4) whether the merits of the case
> were reached in the previous action or whether instead
> dismissal turned on procedural issues; (5) whether the
> moving party sought costs at the time of the dismissal;
> (6) whether the plaintiffs are financially able to bear the
> costs of the prior action; and (7) whether the previous
> suit was vulnerable at the time it was dismissed.

22   *Simmonds v. Geeknet, Inc.*, 2013 U.S. Dist. LEXIS 17560, at *5 (W.D. Wash.

23   February 7, 2013) (court awarded costs, including attorneys' fees, finding factors 2,

24   3, 4, 6, and 7 persuasive) (footnotes omitted).

25
26

> **A.   Plaintiff's Conduct Satisfies the Conditions of Fed.R.Civ.P. 41(d)
> and the Circumstances of the Case Warrant an Award of Costs
> and Attorneys' Fees**

27        There is no question that Plaintiff's voluntary dismissal of the First Action

28   and commencement of the Second Action squarely satisfy the requirements of

1   Fed.R.Civ.P. 41(d).  The parties in the First Action and Second Action are identical,

2   i.e., Plaintiff is the sole plaintiff in both, and Defendants are the sole defendants in

3   both.

4          Likewise, the Second Action is based on or includes the same claims of the

5   First Action.  *See Esquivel*, 913 F. Supp. at 1387 (plaintiff's second action found to

6   be based on or include the same claims in the first action when second action

7   incorporated all previous claims and included additional claims and "the operative

8   facts alleged are essentially the same"); *Jurin*, 695 F. Supp.2d at 1123 ("[i]t appears

9   that Plaintiff has simply re-filed an amended version of his earlier suit"); *Geeknet*,

10  2013 U.S. Dist. at *4 ("the differences between the two actions are mostly cosmetic;

11  this case has the same operative facts, names the same parties, and involves the

12  same conduct as the previous claim.")  The fundamental claims of and facts

13  underlying both Actions are the same.  Both Actions center around Plaintiff's

14  attempt to exploit its *Twiharder* motion picture, which it claims is a parody of the

15  *Twilight* Motion Pictures, and Summit's belief that *Twiharder* and its related media

16  and merchandise infringe its rights in the *Twilight* Motion Pictures.  In both Actions,

17  Plaintiff's fundamental claims are for declaratory judgment, i.e., a declaration that

18  its exploitation of the *Twiharder* motion picture does not infringe Summit's

19  copyrights and trademarks related to and derived from the *Twilight* Motion Pictures.

20  In the First Action, Plaintiff supplemented these fundamental claims with other

21  "money" claims, i.e., antitrust, DMCA, and trademark cancellation claims seeking

22  damages or other relief.  Similarly, in the Second Action, Plaintiff supplemented

23  these claims with a New York common law prima facie tort claim seeking damages.

24  However, the Actions' core claims and facts are identical.

25         Plaintiff has admitted the identity of the First and Second Actions on the

26  record.  It certified the Second Action as related to the First Action on the civil case

27  cover sheet.  When Judge Rakoff asked Plaintiff's counsel if Plaintiff dismissed the

28  First Action and "re-filed [it] in New York," he responded, "Correct.  It's not quite

the same action, but it's certainly similar." (Bost Decl. ¶ 8, Ex. D.)  In fact, it was because of the identity of the actions that Judge Rakoff, again, transferred the Second Action to this District.  In Plaintiff's denied *ex parte* application to stay this matter for 60 days, Plaintiff equates the First and Second Actions, stating it filed the Second Action "to situation this action in its Original Forum." [Dkt. No. 17, p. 9.] Plaintiff makes the same argument in its (also denied) motion to certify Judge Rakoff's transfer orders for interlocutory appeal and its pending motion to dismiss Summit's counterclaims.  [Dkt. No. 25, pp. 17-20.][2]  Clearly, Plaintiff views the First Action and Second Action as equivalents; the Court should also.

In order to obtain relief under Fed.R.Civ.P. 41(d), Defendants need not establish that Plaintiff demonstrated "bad faith."  *See Esquivel*, 913 F. Supp. at 1388.  Instead, it is sufficient that Plaintiff cannot "present a persuasive explanation" for its voluntary dismissal of the First Action and commencement of the Second Action.  *Id*.  Additionally, application of the factors set forth in *Geeknet* (and quoted above) show that Defendants, like the *Geeknet* defendant, are prime candidates for relief under Fed.R.Civ.P. 41(d).  Plaintiff's vexatious intent and forum-shopping by filing (and refiling) its lawsuit against Defendants in the Southern District of New York is undisputed.  Plaintiff voluntarily dismissed the First Action in order to avoid trial before Judge Morrow, who it alleged was not randomly assigned the First Action and unsuccessfully moved to recuse.  Plaintiff also voluntarily dismissed the First Action in order to avoid hearing on Defendants' then-pending motion to compel Plaintiff's responses without objection to Plaintiff's first set of document requests.  Plaintiff also voluntarily dismissed the First Action in order to avoid a ruling on Defendants' then-pending motion to dismiss Plaintiff's antitrust claim.

---

[2]    Likewise, on March 28, 2014, Plaintiff filed a petition for writ of mandamus to the Second Circuit Court of Appeals seeking its review of Judge Rakoff's transfer of the First and Section Actions.  [Dkt. No. 28.]  Plaintiff's writ is pending, and the Second Circuit has not issued any orders relating to it.

Defendants had twice filed motions to dismiss Plaintiff's antitrust claim, and on both occasions Plaintiff avoided briefing the issues raised therein - - first, amending its complaint as a matter of right and, second, seeking to invalidate Defendants' motion by taking issue with the hearing date and then voluntarily dismissing its lawsuit. *See Esquivel*, 913 F. Supp. at 1387 (the plaintiff's "decision to refile her action in the Central District of California and then file the notice of dismissal in the Southern District [of New York] action without responding to defendants' motion to dismiss for lack of personal jurisdiction appears to have been a recognition that her suit in the Southern District was vulnerable on the grounds asserted in the motion.") Also, Defendants were precluded from seeking their costs at the time of, and as a condition of, dismissal as Plaintiff's voluntary dismissal pursuant to Fed.R.Civ.P. 41(a)(1) effectively terminated the First Action and the court's jurisdiction.

### B.   Defendants Are Entitled to Expenses and Attorneys' Fees in the Amount of $52,303.27

When, as is the case here, the criteria of Fed.R.Civ.P. 41(d) are met, the Court has the discretion to order Plaintiff to pay all or part of the costs expended by Defendants in the First Action.  Compensable costs include, but are not limited to, pro hac vice and other court fees, and charges for computerized legal research, messengers, express delivery, postage, duplication, and telephone usage. *Esquivel*, 913 F. Supp. at 1393; *Aloha Airlines, Inc. v. Mesa Air Group, Inc.*, 2007 U.S. Dist. LEXIS 97678, at *21 (D. Haw. July 20, 2007).  Additionally, it is well established that an award of costs under Fed.R.Civ.P. 41(d) includes attorneys' fees. *See Esquivel*, 913 F. Supp. at 1392 ("defendants are entitled to both expenses and attorneys' fees that are reasonably incurred and that will not contribute toward defendants' defense in the present case"); *Aloha*, 2007 U.S. Dist. at *8 ("The majority of courts . . . have awarded attorneys' fees under 41(d) outright, recognizing that including attorneys' fees as part of an award of costs is consistent with the purposes of Rule 41(d)"); *Geeknet*, 2013 U.S. Dist. at *7 (same).  Finally,

"a court should not award costs associated with past work that will still be useful to defendants in the present litigation."  *Holt v. Kormann*, 2012 WL 5829864, at \*5 (C.D. Cal. Nov. 15, 2012) (awarding defendant $78,581.94, the amount of legal fees expended by defendant defending the first action.)

### 1. Defendants' Expenses

Although Defendants incurred other expenses in the First Action, Defendants specifically seek reimbursement of the following charges because they are clearly not associated with past work that will be useful to them in the present action:

| Type of Expense | Amount |
| --- | --- |
| Pro Hac Vice-Related Fees, including Shipping/Federal Express Charges | $509.68 |
| Transportation Costs for July 3, 2013 initial status conference (airfare to and from New York and cab rides in New York) | $523.09 |

(Bost Decl. ¶ 9, Ex. E.)

First, Defendants' attorneys' Pro Hace Vice applications in the First Action do not benefit Defendants in the Second Action.  Second, Defendants' lead counsel's transportation costs incurred attending the July 3, 2013 Status Conference with Judge Rakoff are not useful to them in the Second Action, as this conference was particular to the First Action and is without significance in the Second Action.[3] In sum, Defendants are entitled to reimbursement of costs totaling $1,032.77.

### 2. Defendants' Attorneys' Fees

"Fee awards are calculated using the 'lodestar' method, which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate . . . There is a 'strong' presumption that the lodestar method results in a

---

[3]   As an indicator of its good faith, Defendants are not seeking reimbursement of their lead counsel's substantially more significant travel costs incurred attending hearing on Defendants' successful motion to transfer in the First Action.

reasonable fee." *Holt*, 2012 WL at *6, *citing Purdue v. Kenny A.*, 559 U.S. 542, 543, 130 S.Ct. 1662 (2010).

The lodestar for purposes of this motion totals $51,270.50 for 118 hours of work.

### a.    Defendants' Attorneys' Hourly Rates Are Reasonable

Reasonable hourly rates are "calculated according to the prevailing market rates in the relevant community." *Blum v. Stevenson*, 465 U.S. 886, 895, 104 S.Ct. 1541 (1984).  "If the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation, it is deemed to be reasonable."  *Aloha*, 2007 U.S. Dist. at *13-14.

The lead attorneys in this case charged the following hourly rates for their services:

| Attorney | Hourly Rate |
|---|---|
| Jill M. Pietrini | $550.00 |
| Theodore C. Max | $598.25 |
| David R. Garcia | $550.00 |
| Helen Cho Eckert | $525.00 |
| Paul A. Bost | $395.00 |

(Bost Decl. ¶ 12, Ex. F.)  Regardless of whether the relevant legal market is New York, New York or Los Angeles, California, the hourly rates charged by Defendants' attorneys are reasonable.  These and other rates charged by Sheppard Mullin are consistent with the reputation and experience of the attorneys and professionals who performed the services.  The average billing rates for equity partners, non-equity partners, senior associates, and mid-level associates specializing in litigation at Sheppard Mullin's peer firms are, respectively, $716, $572, $487, and $409 per hour.  (Bost Decl. ¶ 13.)  Such rates are customarily charged for similar work performed in Los Angeles and New York.  Sheppard Mullin is an AV-rated firm in the Martindale-Hubble listing, and the high quality of

its attorneys representing Defendants in the First and Second Action is not subject to dispute.  (Bost Decl. ¶¶ 10-12.)

### b.   Defendants' Attorneys Expended a Reasonable Number of Hours

Courts 'should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case' . . . Typically, "[a]n attorney's sworn testimony that, in fact, [he] took the time claimed . . . is evidence of considerable weight on the issue of the time required." *Holt*, 2012 WL at *6, *citing Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) and *Blackwell v. Foley*, 724 F. Supp.2d 1068, 1081 (N.D. Cal. 2010).

Defendants seek reimbursement of time expended by their attorneys undertaking and relating to tasks undertaken in the First Action that will not be useful to them in the Second Action, including the following:

- Reviewing Plaintiff's initial and amended complaints in the First Action, which totaled 219 and 186 pages, respectively;

- Reviewing and executing Plaintiff's waiver of service of summons and complaint and all documents appended thereto, including documents reflecting Judge Rakoff's participation in the Complex Litigation Pilot Project in the Southern District of New York [Dkt. Nos. 2 and 7 of the First Action];

- Assembling and filing pro hac vice applications and notices of appearances, and reviewing Plaintiff's counsel's post-transfer pro hac vice application;

- Reviewing scheduling and other orders issued by Judge Rakoff not addressing the merits of the parties' dispute, and drafting related documents, including the parties' proposed civil case management plan and attachments thereto [Dkt. No. 8 of the First Action];

- Attending the initial status conferences before Judge Rakoff and Judge Morrow and scheduling deadlines set at the respective conferences;

- Corresponding and conferring with Plaintiff's counsel regarding the parties' Fed.R.Civ.P. 26(f) conference (as opposed to participating in

-13-

the conference itself, even though the usefulness of the conference to Defendants in the Second Action is suspect);

- Corresponding and conferring with Plaintiff's counsel regarding – and revising and reviewing – the parties' stipulation to extend certain deadlines, provide for service by email, withdraw previously served interrogatories, and vacate the scheduling order issued by Judge Rakoff [Dkt. No. 30 of the First Action] (Bost Decl. ¶ 3, Ex. A);

- Corresponding and conferring with Plaintiff's counsel regarding Plaintiff's failure to timely respond to Defendants' first set of requests for production of documents and things and drafting a joint stipulation and motion to compel Defendants' responses thereto [Dkt. No. 72 of the First Action] (Bost Decl. ¶¶ 2-5);

- Corresponding and conferring with Plaintiff's counsel regarding– and revising and reviewing – the parties' stipulation allowing Plaintiff an extension of time to respond to Defendants' initial motion to dismiss [Dkt. No. 43 of the First Action];

- Corresponding and conferring with Plaintiff's counsel regarding – and drafting and revising – a potential stipulation allowing Defendants an extension of time to respond to Plaintiff's first amended complaint;

- Corresponding and conferring with Plaintiff's counsel regarding a potential stipulation allowing Plaintiff an extension of time to respond to Defendants' second motion to dismiss;

- Corresponding and conferring with Plaintiff's counsel regarding Plaintiff's failure to properly serve Defendants with its first amended complaint (Bost Decl. ¶ 6, Ex. B);

- Jointly drafting with Plaintiff's counsel the parties' joint Fed.R.Civ.P. 26(f) report for submission to Judge Morrow [Dkt. No. 49 of the First Action];

- Reviewing and conferring with Plaintiff's counsel threatening a motion for Rule 11 sanctions for Defendants' failure to assert counterclaims and proposing that the proceedings be phased (Bost Decl. ¶ 14, Ex. G);

- Reviewing and responding to Plaintiff's motion for default judgment [Dkt. Nos. 55 and 57 of the First Action];

- Reviewing Plaintiff's statement of objections to the Clerk's forwarding of the application for default to Judge Morrow [Dkt. No. 58 of the First Action];

- Reviewing Plaintiff's application to the Clerk of Court protesting the December 2, 2013 hearing date noticed for Defendants' second motion to dismiss [Dkt. No. 61 of the First Action];

- Reviewing and responding to Plaintiff's statement of objections – not a substantive opposition – to Defendants' second motion to dismiss and to Judge Rakoff's July 30, 2013 order transferring venue [Dkt. Nos. 63 and 65 of the First Action];

- Reviewing Plaintiff's motion to strike Judge Morrow's "counterfeit" order confirming that hearing on Defendants' motion to dismiss was scheduled for December 2, 2013 [Dkt. No. 64 of the First Action];

- Reviewing Plaintiff's statement of objections to Judge Morrow's Scheduling Order and the transcript of the Scheduling Conference [Dkt. No. 66 of the First Action]; and

- Reviewing Judge O'Connell's order denying Plaintiff's motion to recuse.  [Dkt. No. 70 of the First Action.]

Defendants submit herewith copies of billing records reflecting their attorneys' expense of reasonable hours undertaking the foregoing tasks.  (Bost Decl. ¶ 14, Ex. H.)

None of the foregoing tasks is useful to Defendants in the Second Action. Instead, each of these tasks relate solely and exclusively to the First Action.  They do not relate to the fundamental merits of the parties' dispute or procedural issues that survived Plaintiff's voluntary dismissal of the First Action, but instead non-substantive issues that were mooted by Plaintiff's voluntary dismissal of the First Action.  Unlike some of the tasks described below, the above tasks were not "expended towards building intellectual capital and establishing precedent that may be useful in this action." *Geeknet*, 2013 U.S. at *7.  The Court should not entertain any argument from Plaintiff that Defendants' attorneys' fees are excessive.  Plaintiff

has no one to blame but itself or its counsel for the extraordinary amount of "make-work" it created during the First Action, whether it be its refusal to participate in discovery in good faith, its failure to abide by the Local Rules, its many correspondences and demands regarding Defendants' assertion of counterclaims and agreement to conducting the First Action in phases, and its torrent of frivolous filings during October and November 2013, among other things.

Defendants do not seek reimbursement of time expended by their attorneys related to the following tasks, but do so without admission that all of this past work will be useful to them in the Second Action:

- All work related to the claims and defenses raised in the parties' lawsuit;
- All work related to settlement, including preparing for and participating in mediation;
- All work related to Defendants' motions to transfer and dismiss, including drafting motions, researching, meeting and conferring with Plaintiff's counsel, and attending hearings;
- Drafting Defendants' initial disclosures and first sets of requests for production of documents and things and interrogatories;
- Reviewing Plaintiff's initial disclosures;
- Participating in the parties' Fed.R.Civ.P. 26(f) conference; and
- Drafting responses and objections to Plaintiff's first set of document requests.

Accordingly, the Court should order Plaintiff and/or its counsel to reimburse Defendants' attorneys' fees in the amount of $51,270.50.

## C.   The Court Should Stay the Proceeding

Fed.R.Civ.P. 41(d) plainly authorizes the Court to stay the proceedings pending Plaintiff's reimbursement of Defendants' costs incurred in the First Action. Alternatively, the Court should order Plaintiff and/or its counsel to pay all sums due to Defendants within thirty days of the Court's order, failing which sanctions will be

levied against Plaintiff and/or its counsel.  *See Holt*, 2012 WL at *10 (court ordered plaintiff to pay award of costs over $80,000 within thirty days).  As yet another alternative, the Court should order Plaintiff and/or its counsel to post security, bond, or undertaking, consisting of a cash amount or valid corporate surety bond, with the Court Clerk for costs in the amount of $52,303.27 within fifteen days of the Court's order, failing which the matter should be suspended or dismissed.  *See Espinosa v. Marshall*, 2007 WL 214439 (E.D. Cal. Jan. 26, 2007) (on defendant's Fed.R.Civ.P. 41(d) motion, the magistrate judge ordered plaintiff to post the above-described bond; "[f]ailure to post security will result in a recommendation that this action be dismissed . . . Unless and until security is posted, and with the exception of seeking reconsideration of his order with the district judge, plaintiff shall not make further filings in this lawsuit.")

**IV.    CONCLUSION**

For the reasons stated above, the Court should order Plaintiff and/or its counsel to pay Defendants their costs expended in the First Action and not useful to Defendants in the Second Action, as detailed above and in the attached declaration of Paul Bost, and should stay these proceedings until Plaintiff  and/or its counsel have reimbursed Defendants in full.

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated:  April 21, 2014       By:  /s/ Paul A. Bost
                                  Paul A. Bost

                                  Attorneys for Defendants

SMRH:417717240.2

-17-

<u>PROOF OF SERVICE</u>

<u>STATE OF CALIFORNIA, COUNTY OF LOS ANGELES</u>

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 1901 Avenue of the Stars, Suite 1600, Los Angeles, CA 90067-6055.

On April 21, 2014, I served true copies of the following document(s) described as **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR COSTS PURSUANT TO FED.R.CIV.P. 41(d)** on the interested parties in this action as follows:

James H. Freeman, Esq.
J.H. Freeman Law
3 Columbus Circle, 15 FL
New York, NY 10019
Tel:  (212) 931-8535
Fax:  (212) 496-5870
james@jhfreemanlaw.com

Steve Lowe, Esq.
LOWE & ASSOCIATES, P.C.
11400 Olympic Boulevard, Suite 640
Los Angeles, CA  90064
Tel:  (310) 477-5811
Fax:  (310) 477-7672
steve@lowelaw.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 21, 2014, at Los Angeles, California.

/s/ Lynne Thompson
Lynne Thompson

-18-