SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JILL M. PIETRINI (Cal. Bar No. 138335)
jpietrini@sheppardmullin.com
PAUL A. BOST (Cal. Bar No. 261531)
pbost@sheppardmullin.com
BENJAMIN O. AIGBOBOH (Cal. Bar. No. 268531)
baigboboh@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  (310) 228-3700 / Facsimile: (310) 228-3701

Attorneys for Defendant and
Counterclaimant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BETWEEN THE LINES PRODUCTIONS, LLC a California limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>LIONS GATE ENTERTAINMENT CORP., a British Columbia corporation, and SUMMIT ENTERTAINMENT, LLC, a Delaware limited liability company,<br><br>        Defendants.<br><br>_____<br><br>AND RELATED COUNTERCLAIMS. | Case No. 2:14-cv-00104-R (PJWx)<br><br>**DEFENDANT AND COUNTERCLAIMANT SUMMIT ENTERTAINMENT, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION *IN LIMINE* NO. 2 TO EXCLUDE FINANCIAL REPORTS BY NASH INFORMATION SERVICES, LLC AND ANY TESTIMONY THEREON**<br><br>Hon. Judge Manuel L. Real<br><br>Hearing Date:  November 25, 2014<br>Time:         9:00 a.m.<br>Ctrm.:        8<br><br>Complaint filed:    Dec. 16, 2013<br>Counterclaims filed:  Jan. 27, 2014<br>Trial Date:        Nov. 25, 2014 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ..................................................................................... 1

II.   RELEVANT FACTS ............................................................................... 2

    A.   BTL's First Lawsuit Against Defendants ................................. 2

    B.   BTL's Current Action Against Summit ................................... 3

III.  SUMMIT'S MOTION *IN LIMINE* NO. 2 SHOULD BE GRANTED ........... 6

    A.   Summit's Motion Should Be Granted Because BTL Improperly
    Failed To Disclose Bruce Nash And His Financial Reports In
    Violation Of Fed.R.Civ.P. 26(a)(1) ........................................ 6

        1.   BTL Failed To Disclose Mr. Nash In Violation Of
        Fed.R.Civ.P. 26(a)(1)(A)(i) ......................................... 6

        2.   BTL Failed To Disclose The Nash Financial Reports In
        Violation Of Fed.R.Civ.P. 26(a)(1)(A)(iii) ................. 8

    B.   Summit's Motion Should Be Granted Because BTL Improperly
    Failed To Disclose Mr. Nash As An Expert In Violation Of
    Fed.R.Civ.P. 26(a)(2) ............................................................. 12

        1.   Mr. Nash Is An Expert Witness Under Fed.R.Evid. 702 .......... 13

        2.   BTL's Failure To Disclose Mr. Nash As An Expert
        Witness Is Not Substantially Justified Or Harmless ................. 15

IV.   CONCLUSION ..................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Allegro Ventures, Inc. v. Almquist*
   2014 U.S. Dist. LEXIS 64008 (S.D. Cal. May 8, 2014) .................................... 17

*Am. Family Mut. Ins. Co. v. Spectre W. Builders Corp.*
   2011 U.S. Dist. LEXIS 11328 (D. Ariz. Feb. 4, 2011) ..................................... 13

*Am. Realty Trust, Inc. v. Matisse Partners, L.L.C.*
   2002 U.S. Dist. LEXIS 12560 (N.D. Tex. July 10, 2002) ................................ 11

*Carson Harbor Vill., Ltd. v. Unocal Corp.*
   2003 U.S. Dist. LEXIS 14438 (C.D. Cal. Aug. 8, 2003) .................................. 12

*Crime, Justice & Am., Inc. v. Smith*
   2014 U.S. Dist. LEXIS 141388 (E.D. Cal. Oct. 2, 2014) ............................ 13, 14

*Emmpresa Cubana del Tabaco v. Culbro Corp.*
   213 F.R.D. 151 (S.D.N.Y. 2003) ....................................................................... 16

*Equal Employment Opportunity Commission v. GLC Restaurants, Inc.*
   2007 U.S. Dist. LEXIS 399 (D. Ariz. Jan. 4, 2007)........................................... 11

*Frontline Med. Assocs., Inc. v. Coventry Health Car*
   263 F.R.D. 567 (C.D. Cal. 2009)......................................................................... 9

*Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*
   2011 U.S. Dist. LEXIS 52792 (E.D. Cal. May 17, 2011)............................ 12, 13

*Estate of Gonzalez v. Hickman*
   2007 U.S. Dist. LEXIS 84390 (C.D. Cal. June 28, 2007).......................9, 11, 16

*Hoffman v. Constr. Protective Servs., Inc.,*
   541 F.3d 1175 (9th Cir. 2008) ........................................................................... 12

*Humboldt Baykeeper v. Union Pac. R.R. Co.*
   2010 U.S. Dist. LEXIS 52182 (N.D. Cal. May 27, 2010) ................................ 15

*Internet Servs. LLC v. Immersion Corp.*
   2008 U.S. Dist. LEXIS 120563 (N.D. Cal. May 13, 2008) .............................. 16

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Jackson v. Am. Family Mut. Ins. Co.*
  2012 WL 845646 (D. Nev. Mar. 12, 2012) ......................................................... 7

*Jiminez v. Reno*
  2007 WL 1462798 (C.D. Cal. 2007) .................................................................. 7

*Mariscal v. Graco, Inc.*
  2014 U.S. Dist. LEXIS 120182 (N.D. Cal. Aug. 27, 2014) .............................. 11

*NutraSweet Co. v. X-L Eng'g Co.*
  227 F.3d 776 (7th Cir. 2000) .......................................................................... 16

*Ollier v. Sweetwater Union High Sch. Dist.*
  2014 U.S. App. LEXIS 18020 (9th Cir. Sept. 19, 2014) ................................... 7

*Patterson v. Balsamico*
  440 F.3d 104 (3d Cir. 2006) ............................................................................. 7

*R&R Sails, Inc. v. Ins. Co. of the State of Pa.*
  673 F.3d 1240 (9th Cir. 2012) .......................................................................... 7

*Therapeutics, Inc. v. Foley & Lardner, LLP*
  2008 U.S. Dist. LEXIS 51171 (S.D. Cal. July 2, 2008) ................................... 13

*Toyrrific, LLC v. Karapetian*
  2013 U.S. Dist. LEXIS 54043 (C.D. Cal. Apr. 16, 2013) ............................. 9, 11

*Tyco Thermal Controls, Inc. v. Redwood Industrials, LLC*
  2012 U.S. Dist. LEXIS 91598 (N.D. Cal. June 29, 2012) ............................... 16

*Ventra v. U.S.*
  121 F. Supp.2d 326 (S.D.N.Y. 2000) ................................................................ 8

*Wong v. Regents of the Univ. of Cal.*
  410 F.3d 1052 (9th Cir. 2005) ........................................................................ 17

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*
  259 F.3d 1101 (9th Cir. 2001) ........................................................................ 16

Statutes

28 U.S.C. § 1404 ................................................................................................. 2

# **TABLE OF AUTHORITIES**
### (continued)

**Page(s)**

Other Authorities

Fed.R.Civ.P. 26(a) ................................................................................. 6

Fed.R.Civ.P. 26(a)(1)(A)(i) ................................................................... 7

Fed.R.Civ.P. 26(a)(1)(A)(iii) ................................................................ 9

Fed.R.Civ.P. 26(a)(2)(A) ..................................................................... 12

Fed.R.Civ.P. 26(a)(2)(B) ..................................................................... 12

Fed.R.Civ.P. 26(a)(2)(D) ..................................................................... 12

Fed.R.Civ.P. 37(c)(1) ...................................................................... 7, 12

Fed.R.Evid. 702 ................................................................................... 13

# I.     __INTRODUCTION__

At 11:52 p.m. PST on October 6, 2014 – the discovery cut-off – Plaintiff and Counter-Defendant Between the Lines Productions, LLC ("BTL") disclosed Bruce Nash of Nash Information Services, LLC for the first time in this case.  Four business day before that, BTL, in opposition to Summit's motion for summary adjudication and again for the first time, produced "financial estimates" prepared by Mr. Nash that BTL claims support its demand for more than $6 million in damages.  Despite the fact that BTL did not identify Mr. Nash as an expert witness in its witness list, the documents make it clear that Mr. Nash's purported testimony is expert testimony.  It is undisputed that BTL never disclosed Mr. Nash (as a lay or expert witness) or the financial estimates prepared by him pursuant to Fed.R.Civ.P. 26.

Fed.R.Civ.P. 26 requires parties to disclose information on which they intend to rely, including all documents and information supporting their damages calculations.  Failure to do so is grounds for automatic exclusion of the undisclosed evidence, unless the party that failed to disclose can establish that is failure to comply with Fed.R.Civ.P. 26 was substantially justified or harmless.

BTL has no justification for its failure to disclose Mr. Nash or his financial reports relating to BTL's purported damages.  The only plausible explanation is that BTL hoped its failure to disclose Mr. Nash and his financial reports (which are in effect expert reports) would prejudice Defendant and counterclaimant Summit Entertainment, LLC ("Summit"), which is in line with BTL's conduct in this action and the previous action against Defendants[1] that it voluntarily dismissed.  (*See*, *e.g.*, Dkt. 66 at 5-10 (denying BTL's motion to amend, finding that there was 'no other explanation [for its motion] than bad faith…to unnecessarily drag out these

---

[1]     Defendant Lions Gate Entertainment Corp. ("Lions Gate") was dismissed on October 20, 2014 from this case on summary judgment.  (Dkt. 95.)

1   proceedings' and that 'BTLP is only attempting in bad faith to increase the cost of

2   litigation to Defendants.'").  Nor can BTL establish that its failure to disclose

3   Mr. Nash or his financial reports was harmless.  Summit has not been able to depose

4   Mr. Nash or hire, consult and/or disclose its own experts about Mr. Nash and the

5   financial estimates contained in Mr. Nash's reports.

6        Accordingly, the Court should grant Summit's motion and preclude the

7   introduction of Mr. Nash's financial reports and any testimony relating to such

8   reports at trial.

9   **II.**    **RELEVANT FACTS**

10       **A.**    **BTL's First Lawsuit Against Defendants**

11        On May 28, 2013, BTL filed a 219-page "Anti-Trust Complaint" (1,300+

12   pages with exhibits) against Summit and Lions Gate in the Southern District of New

13   York, Case No. 1:13-cv-03584-JSR, asserting the following claims:  (1) declaratory

14   judgment that *Twiharder* constituted a fair use of the *Twilight* Motion Pictures; (2)

15   violation of the Digital Millennium Copyright Act ("DMCA"); (3) violation of the

16   Sherman Antitrust Act; and (4) cancellation of certain of Summit's TWILIGHT

17   trademark registrations (the "First Lawsuit").  (Dkt. 71-5, ¶ 41.)

18        On June 28, 2013, Defendants filed a  motion to transfer the First Lawsuit to

19   the Central District of California pursuant to 28 U.S.C. § 1404.  (Dkt. 71-5 ¶ 42.)

20   On July 30, 2013, Judge Jed Rakoff of the Southern District of New York granted

21   Defendants' motion to transfer, and the First Lawsuit was transferred and assigned

22   to the Hon. Margaret M. Morrow.  (Dkt. 71-5 ¶ 43.)

23        On August 2, 2013, BTL served its "Initial Disclosures Pursuant to Fed. R.

24   Civ. P. 26(a)(1)" in the First Lawsuit.  (Bost. Decl. ¶ 2, Ex. A.)  In its initial

25   disclosures in the First Lawsuit, BTL disclosed 25 witnesses.  (*Id.*)  Neither Bruce

26   Nash nor Nash Information Services was disclosed.  (*Id.*)  In its initial disclosures,

27   BTL stated that it was seeking approximately $125,000,000 in compensatory

28   damages, treble damages in the amount of $375,000.000, disgorgement of Summit's

profits earned from each of the *Twilight* motion pictures, interest and attorneys' fees. (*Id.*)

After the First Lawsuit was transferred, Defendants filed a motion to dismiss BTL's antitrust, trademark cancellation, and DMCA claims. (Dkt. 71-5 ¶ 44.) BTL did not defend the merits of these claims but, rather, filed a 186-page First Amended Complaint pursuant to FRCP 15(a)(1)(B), in which it voluntarily dismissed its trademark cancellation and DMCA claims, but continued to assert its antitrust and declaratory judgment claims. (Dkt. 71-5 ¶ 45.) Defendants filed a second motion to dismiss on October 22, 2013, which again sought dismissal of BTL's antitrust claim, and set the hearing for December 2, 2013. BTL never filed an opposition. (Dkt. 71-5 ¶ 46.) Instead, BTL launched a series of vexatious and meritless filings disputing, among other things, the impartiality of Judge Morrow and accusing her of filing "counterfeit" orders. (Dkt. 71-5 ¶ 47.) BTL also refused to comply with its discovery obligations, forcing Summit to file a motion to compel. (Dkt. 71-5 ¶ 47.)

Ultimately, while Defendants' motion to compel was pending, and after each of BTL's meritless filings was denied, BTL voluntarily dismissed the First Lawsuit without prejudice pursuant to FRCP 41(a)(1) on December 13, 2013, the day its opposition to Defendants' second motion to dismiss was due. (Dkt. 71-5 ¶ 48.)

## B.     BTL's Current Action Against Summit

The very next business day, December 16, 2013, BTL re-filed its lawsuit – the present action – once again in the Southern District of New York (the "Second Lawsuit"). (Dkt. 71-5 ¶ 50.) BTL did not include any antitrust claims it allegedly had against Defendants in the Second Lawsuit. On January 6, 2014, Judge Rakoff *sua sponte* transferred the action – again – to the Central District of California. (Dkt. 71-5 ¶ 51.) Despite BTL's refusal to serve Defendants with a copy of its Complaint, Defendants, on January 27, 2014, filed their Answer and Summit's Counterclaims. (Dkt. 71-5 ¶ 52.)

On March 10, 2014, BTL filed an untimely (and, ultimately, entirely unmeritorious) motion to dismiss Summit's Counterclaims.  (Dkt. 71-5 ¶ 53.)  On June 25, 2014, BTL filed its Answer to Summit's Counterclaims.  (Dkt. 71-5 ¶ 54.)

On July 16, 2014, BTL served its "Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)" in the Second Lawsuit.  (Bost Decl. ¶ 3, Ex. B.)  In its initial disclosures in the Second Lawsuit, BTL disclosed 15 witnesses.  Again, Bruce Nash nor Nash Information Services was disclosed.  (*Id.*)  In its initial disclosures in the Second Lawsuit, BTL stated that it was seeking approximately $13,300,00 in compensatory damages, treble damages for "Antitrust," disgorgement of Defendants' profits earned from the motion picture *Breaking Wind*, interest and attorneys' fees.  (*Id.*)  BTL asserted that its $13,300,000 in compensatory damages was based on:

> 1. Recovery of Lost Profits, measured by revenues of comparable feature-length motion pictures parodies, e.g., *Breaking Wind* (2012).
>
> 2. Recovery for Foreseeable Loss of Business opportunities[.]
>
> 3. Recovery for Injury to Business Reputation / Goodwill[.]

(*Id.*)

BTL did not disclose how it calculated its $13,300,000 demand or produce any documentation on which its calculation was based (*id.*) even though BTL is required to do under FRCP 26.  BTL did not amend or supplement its initial disclosures in this case.  (*Id.*)  Nor did BTL serve any expert disclosures or expert reports in this case.  (*Id.*)

On August 1, 2014, BTL filed a motion for leave to amend and, on August 18, 2014, BTL filed its 135-page proposed First Amended Complaint.  (Dkt. 71-5 ¶ 55.)

On August 28, 2014, the Court issued its "Order (in Chambers) Setting Pre-Trial & Trial Dates," and setting:  (1) October 6, 2014 as the deadline to file and serve memoranda of contentions of fact and law, exhibit lists and witness lists and the discovery cut-off; (2) October 27, 2014 as the deadline to lodge the pre-trial

conference order; (3) November 3, 2014 as the date for the pre-trial conference; and (4) November 25, 2014 as the first date for trial.

On September 15, 2014, the Court issued an Order Denying Plaintiff's Motion for Leave to file an Amended Complaint.  In the Order, the Court found that, in the First Lawsuit, BTL had "refused to comply with discovery," "filed a series of vexatious and meritless filings" and voluntarily dismissed the First Lawsuit "ostensibly to avoid an adverse ruling" on Defendants' motion to dismiss BTL's antitrust claims.  The Court also found that, in the Second Lawsuit, BTL had acted in bad faith to "unnecessarily drag out these proceedings" and "to increase the costs of litigation to Defendants."  (Dkt. 71-5 ¶ 56.)

On October 6, 2014, at 11:52 p.m. PST – 8 minutes before the close of discovery and 7 weeks before trial – BTL filed its witness list.  (Bost Decl. ¶ 4, Ex. C.)  BTL disclosed 32 witnesses it intends to call at trial, 19 of whom were not disclosed in BTL's or Summit's Rule 26 disclosures.  (Dkt. 84; Bost Decl. ¶ 2 Ex. B.)  This was the first time that Bruce Nash and Nash Information Services were disclosed by BTL.  BTL did not disclose Mr. Nash as an expert, and treated him as a third-party witness, stating that he should be contacted directly, and not through BTL's counsel.  (Dkt. 84 at 3:2-4.)

At the same time, BTL filed its proposed exhibit list.  (Dkt. 85.)  In it, BTL identified, the following proposed exhibits, which appear to relate to, or be created by, Mr. Nash:

| Ex. No. | Description |
| --- | --- |
| 41 | Nash Information Services, LLC (Samples, Projection Guides) |
| 42 | Nash Information Services, LLC (Invoices, Fees) |
| 43 | Nash Information Services, LLC (Correspondence with BTLP) |
| 44 | Nash Information Services, LLC (FIRST_Sales Analysis – Twiharder v3.xls) |

| Ex. No. | Description |
|---------|-------------|
| 45 | Nash Information Services, LLC (SECOND_Low Budget Releases.xls) |
| 46 | Nash Information Services, LLC (THIRD_Extra Comps.xls) |
| 47 | Nash Information Services, LLC (FOURTH_Sales Analysis_Low Budget Films.xls) |
| 48 | Nash Information Services, LLC (FIFTH_Sales Analysis – To Date Estimates.xls) |

(Dkt. 85 at 5:16-6:10.)[2]

On October 13, 2014, BTL filed the parties' joint exhibit list, and provided identical descriptions for Exhibit Nos. 41-48.  (Dkt. 89 at 40:10-27.)  Exhibits 41-48 (and any other documents found to relate to Mr. Nash) are referred to collectively as the "Nash Financial Reports.")

## III.  SUMMIT'S MOTION *IN LIMINE* NO. 2 SHOULD BE GRANTED

### A.  Summit's Motion Should Be Granted Because BTL Improperly Failed To Disclose Bruce Nash And His Financial Reports In Violation Of Fed.R.Civ.P. 26(a)(1)

#### 1.  BTL Failed To Disclose Mr. Nash In Violation Of Fed.R.Civ.P. 26(a)(1)(A)(i)

Even if treated as a lay witnesses (he should not be), Mr. Nash should be excluded because BTL failed to timely disclose him pursuant to Fed.R.Civ.P. 26(a)(1)(A)(i).

As is discussed in Summit's Motion *in Limine* No. 1, parties to a lawsuit must disclose evidence in support of their claims and defenses.  Fed.R.Civ.P. 26(a).  This duty to disclose includes the duty to disclose the names, addresses, telephone

---

[2]      BTL identified Exhibit 49 as "Master_Limited Release.xls (Composite Work)."  (Dkt. 85 at 6:11-12.)  It is not clear what this refers to or who prepared it. To the extent it was prepared by Mr. Nash, at his direction or with his assistance, it should be excluded for the reasons identified herein.

numbers, and subjects of information known for each individual likely to have discoverable information on which the disclosing party may rely.  Fed.R.Civ.P. 26(a)(1)(A)(i).  This allows the other parties to determine whether to seek discovery from such witnesses and to contact them and perhaps serve deposition or trial subpoenas on them.  *Ollier v. Sweetwater Union High Sch. Dist.*, 2014 U.S. App. LEXIS 18020, at *36 (9th Cir. Sept. 19, 2014).  As such, failure to timely and properly disclose witnesses, without substantial justification, is grounds for their exclusion at trial.  Fed.R.Civ.P. 37(c)(1).[3]  BTL cannot seriously argue that it just learned of Mr. Nash and his financial reports.  Indeed, BTL has known about Mr. Nash for more than a year before filing its witness list.

BTL disclosed Bruce Nash of Nash Information Services, LLC witness list filed on October 6, 2014.  BTL did not disclose Mr. Nash before October 6, 2014 (Bost Decl. ¶ 3, Ex. B) or identify the subject matter or scope of Mr. Nash's purported testimony in its witness list.  (Dkt. 84 at 3:2-4.)  Documents attached to BTL's opposition to Defendants' motion for summary adjudication – which BTL filed four business days before the discovery cut-off – suggest that Mr. Nash will testify to support BTL's claim for $6.5 million in damages and establish that BTL has been in communication with Mr. Nash about this matter and his purported

---

[3]    *See also R&R Sails, Inc. v. Ins. Co. of the State of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012) (Rule 37(c)(1) "forbid[s] the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.") (citation and quotation omitted); *Patterson v. Balsamico*, 440 F.3d 104, 118 (3d Cir. 2006) (affirming the district court's order precluding belatedly-identified witnesses from testifying at trial); *Jackson v. Am. Family Mut. Ins. Co.,* 2012 WL 845646, at **3-4 (D. Nev. Mar. 12, 2012) (excluding testimony of plaintiff's "untimely disclosed" witnesses— which witnesses were disclosed on the last day of the discovery cut-off—and finding that "[a] trial court's case management efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines"); *Jiminez v. Reno*, 2007 WL 1462798, at *2-3 (C.D. Cal. 2007) (precluding witnesses from testifying at trial who defendants—without justification—had failed to timely disclose in initial or supplemental disclosures).

financial estimates since at least July 2013 – a year before BTL served its FRCP 26 initial disclosures in the Second Lawsuit and nearly 15 months before BTL improperly identified Mr. Nash in its witness list.  (Dkt. 75-33, 78 at 3:21-26.)  This is the only evidence BTL has introduced to support its claim for millions of dollars in damages.  There is no justification for BTL's failure to disclose Mr. Nash and his report for more than a year and mere minutes before the close of discovery.  It appears that BTL intentionally withheld information about Mr. Nash and his report – the only evidence BTL has to support its preposterous demand for millions of dollars – in an attempt to deny Defendants a chance to depose Mr. Nash and to discredit his baseless conclusions.  This is precisely the type of conduct that Fed.R.Civ.P. 26 and 37 are intended to eliminate.  *Ventra v. U.S.*, 121 F. Supp.2d 326, 332 (S.D.N.Y. 2000) ("The purpose of [Rule 37] is to prevent the practice of 'sandbagging' an adversary with new evidence.").

        In short, BTL never disclosed Mr. Nash in any FRCP 26 disclosures, and identified him for the first time in its witness list that was filed eight minutes before the close of discovery.  For the reasons set forth in Summit's Motion *in Limine* No. 1 and above, BTL should be precluded from introducing Mr. Nash's testimony at trial.

### 2.     BTL Failed To Disclose The Nash Financial Reports In Violation Of Fed.R.Civ.P. 26(a)(1)(A)(iii)

        BTL seeks $13.3 million in compensatory damages for its claim for prima facie tort.  Other than conclusory statements in its initial disclosures, BTL did not provide any basis or support for its $13 million demand until mere days before the discovery cut-off.  In its opposition to Summit's motion for summary adjudication, BTL, for the first time, disclosed that its demand was purportedly supported by "financial estimates from Nash Communications, LLC [*sic*], a leading third party movie industry research firm based in Los Angeles, California."  (Dkt. 78 at 3:21-25.  BTL attached documents from Nash Information Services, LLC and Mr. Nash,

1  which appear to be those listed by BTL as Exhibit Nos. 41-48.  (Dkt. 75-33.)

2  Because these documents purportedly support BTL's damages calculation, and BTL

3  failed to properly disclose them, the Nash Financial Reports must be excluded under

4  Fed.R.Civ.P. 37.

5        Pursuant to Fed.R.Civ.P. 26(a), a party must disclose:

6        computation of each category of damages claimed by the disclosing
   party—who must also make available for inspection and copying as
7  under Rule 34 the documents or other evidentiary material, unless
   privileged or protected from disclosure, on which each computation is
8  based, including materials bearing on the nature and extent of injuries
   suffered.
9

10  Fed.R.Civ.P. 26(a)(1)(A)(iii); *see also Toyrrific, LLC v. Karapetian*, 2013 U.S. Dist.

11  LEXIS 54043, at *8 (C.D. Cal. Apr. 16, 2013) (pursuant to FRCP 26, parties must

12  disclose damages calculation and support "of their own volition and without being

13  compelled.").  FRCP 26 "requires a computation [of claimed damages], supported

14  by documents." *Frontline Med. Assocs., Inc. v. Coventry Health Car*, 263 F.R.D.

15  567, 569 (C.D. Cal. 2009).  Where a plaintiff claims lost profits, to comply with

16  Fed.R.Civ.P. 26, it must provide "information reasonably available to it as to gross

17  revenues, expense and any other component of its lost profits computation." *Id*. at

18  570.  Exclusion of undisclosed damages information or documents is automatic

19  unless the party facing sanctions can prove that its failure to disclose was either

20  justified or harmless.  *Estate of Gonzalez v. Hickman*, 2007 U.S. Dist. LEXIS

21  84390, at **7-8 (C.D. Cal. June 28, 2007).  Exclusion is warranted "even when a

22  litigant's entire cause of action will be precluded." *Toyrrific*, 2013 U.S. Dist.

23  LEXIS 54043, at **8-9 (citing *Hoffman v. Constr. Protective Servs., Inc.*¸ 541 F.3d

24  1175, 1180 (9th Cir. 2008)).  BTL cannot meet its burden of establishing

25  justification or harmlessness.  Therefore, Mr. Nash's Financial Reports should be

26  excluded.

27        BTL did not disclose any of the Nash Financial Reports until September 30,

28  2014 – four business days before the close of discovery – when it filed its opposition

to Summit's motion for summary adjudication.  (Dkt. 75-33, 78 at 3:21-26.)  It is clear from the documents themselves that BTL has been in possession of the Nash Financial Reports – including the financial estimates BTL now uses to support its claim for $13.3 million in damages – **since at least July 2013**, which is six months before BTL filed the Second Lawsuit, a year before BTL served its initial disclosures in the Second Lawsuit, and nearly 15 months before the close of discovery.  BTL has no justification for its failure to properly disclose its damages calculation and support therefor.

BTL's failure to comply with Fed.R.Civ.P. 26 substantially prejudices Summit.  BTL did not "disclose" Mr. Nash or the Nash Financial Reports until four business days before the close of discovery, and while Summit were preparing its reply brief in support of its motion for summary adjudication, witness list, exhibit list, and memorandum of contentions of law and fact, all of which were due on October 6, 2014 (the close of discovery).  Even if Summit were not engaged in preparing numerous Court filings, it would still have been significantly prejudiced as there was no possible way for it to prepare for and depose Mr. Nash about the Nash Financial Reports before the discovery cut-off or trial.[4]  Furthermore, by failing to disclose the Nash Financial Reports until mere days before the close of discovery and after the deadline to disclose experts had passed, BTL made it impossible for Summit to designate its own expert(s) to rebut the information and conclusions contained in the Nash Financial Reports.  Courts routinely exclude damages calculations and the documents purportedly supporting them in similar

---

[4]    BTL has not identified Mr. Nash as an expert.  As is clear from the nature of the Nash Financial Reports, Mr. Nash's testimony is expert testimony under Fed.R.Evid. 702.  However, given BTL's position that Mr. Nash is not an expert, but instead a third-party lay witness, Summit would have had to subpoena Mr. Nash to testify, which it could not do mere days before the discovery cut-off.  Even if Summit could get Mr. Nash served with a subpoena in four days, the subpoena would be subject to a motion to quash by Mr. Nash for lack of reasonable notice.

circumstances.  *See*, *e.g.*, *Estate of Gonzalez*, 2007 U.S. Dist. LEXIS 84390, at

**15-16:

> [T]he Estate's claim for economic damages, based on Gonzalez's lost
> earning potential, depends both on undisclosed documentary evidence
> of past earnings and on assumptions regarding his future work life….
> It depends as well on appropriate discounting of any future earnings to
> present value.  Defendants were entitled to know plaintiffs'
> assumptions concerning these various computational criteria, to test
> them through discovery aimed at the relevant underlying factors…, and
> to rebut them by retaining an expert who could opine on Gonzalez's
> potential future earnings and the appropriate discount rate.  Plaintiffs'
> failure to disclose the Estate's damages calculation precluded
> Defendants from taking the necessary discovery and obtaining an
> appropriate expert opinion.  This warrants exclusion of lost earnings
> evidence under Rule 37(c)(1).[5]

---

[5]    *See also Mariscal v. Graco, Inc.*, 2014 U.S. Dist. LEXIS 120182, at **5-6
(N.D. Cal. Aug. 27, 2014) (excluding evidence or testimony related to damages
claim because the plaintiff failed to comply with Fed.R.Civ.P. 26, which "denied
Defendant the opportunity to adequately conduct discovery and prepare a defense on
this claim."); *Toyrrific*, 2013 U.S. Dist. LEXIS 54043, at *8-9 (excluding damages
where "[l]ate disclosure of damages requires the Court to create a new briefing
schedule and re-open discovery" because "[s]uch modifications to the Court's and
the parties' schedules are not 'harmless'"); *Equal Employment Opportunity
Commission v. GLC Restaurants, Inc.*, 2007 U.S. Dist. LEXIS 399, at **29-30 (D.
Ariz. Jan. 4, 2007) ("As a general matter, disclosing a computation of damages
under Rule 26(a) is necessary for the opposing party to produce responding
evidence, such as an expert report.  The Court cannot conclude that Plaintiffs'
failure to disclose a computation of damages…was harmless.  Thus, pursuant to
Rule 37(c)(1), Plaintiffs will be prevented from presenting at trial any computation
of damages…required by Rule 26(a)(1)(C)."); *Am. Realty Trust, Inc. v. Matisse
Partners, L.L.C.*, 2002 U.S. Dist. LEXIS 12560, at **16-18 (N.D. Tex. July 10,
2002) ("All of the events giving rise to the plaintiffs' claims in this case occurred
nearly two years ago, and the information necessary to make a calculation of their
damages is within the plaintiffs' sole possession.  The court finds that the plaintiffs
made a tactical decision to ambush the defendants by withholding their main claim
for damages until after the close of discovery….  [T]he plaintiffs here had all of the
necessary facts to disclose their damage theory months ago, and they have never
provided proper support for their damage calculations.  Therefore, for all of the
reasons discussed, the court grants the defendants' motion to exclude the plaintiffs'
evidence of damages arising from securities liquidated due to margin calls.").

**B.    Summit's Motion Should Be Granted Because BTL Improperly Failed To Disclose Mr. Nash As An Expert In Violation Of Fed.R.Civ.P. 26(a)(2)**

In addition to the disclosures of lay witnesses required by Fed.R.Civ.P. 26(a)(1), a party must disclose the identity of any expert witnesses it may use at trial.  Fed.R.Civ.P. 26(a)(2)(A).  If the expert was retained or employed to provide expert testimony in the case, the disclosure must be accompanied by a written expert report.  Fed.R.Civ.P. 26(a)(2)(B).  This report must include:  (1) "a complete statement of all opinions the witness will express and the basis and reasons for them"; (2) "the facts or data considered by the witness in forming them"; (3) "any exhibits that will be used to summarize or support them"; (4) "the witness's qualifications, including a list of all publications authored in the previous 10 years"; (5) "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (6) "a statement of the compensation to be paid for the study and testimony in the case." *Id.*  Absent stipulation or of court order, expert witness disclosures must be made at least 90 days before trial.  Fed.R.Civ.P. 26(a)(2)(D).

A party that fails to disclose its experts and their reports should be barred from introducing either, unless the failure to disclose was "substantially justified" or "harmless."  Fed.R.Civ.P. 37(c)(1).  FRCP 37(c)(1) "gives teeth" to the disclosure requirements "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (citation and quotation omitted).  Thus, "[e]xcluding expert evidence as a sanction for failure to disclose expert witnesses in a timely fashion is automatic and mandatory unless the party can show the violation is either justified or harmless." *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 2003 U.S. Dist. LEXIS 14438, at *7 (C.D. Cal. Aug. 8, 2003) (internal quotations and citation omitted); *see also Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, 2011 U.S. Dist. LEXIS 52792, at *10 (E.D. Cal. May 17, 2011)

-12-

1  ("Exclusion of improperly disclosed expert witnesses is 'self-executing…and

2  automatic to provide a strong inducement for disclosure of material….") (quoting

3  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).

4  "[T]he burden falls on the party facing the sanction to demonstrate that its expert

5  witness should not be excluded under Rule 37(c)(1)."  *Gerawan Farming*, 2011 U.S.

6  Dist. LEXIS 52792, at *11; *see also Am. Family Mut. Ins. Co. v. Spectre W.

7  Builders Corp.*, 2011 U.S. Dist. LEXIS 11328, at *9 (D. Ariz. Feb. 4, 2011).

8           There can be no doubt that Mr. Nash's purported testimony falls squarely

9  within Fed.R.Evid. 702.  BTL should have disclosed him pursuant to Fed.R.Civ.P.

10  26(a)(2).  It failed to do so, and cannot meet its burden of establishing justification

11  or harmless.  BTL should be precluded from calling Mr. Nash at trial.

12           **1.     Mr. Nash Is An Expert Witness Under Fed.R.Evid. 702**

13           An expert witness is one who, "by knowledge, skill, experience, training or

14  education," may provide testimony in the form of opinion if "the expert's scientific,

15  technical or other specialized knowledge will help the trier of fact," the testimony is

16  based on sufficient facts or data, and the testimony is the product of reliable

17  methods reasonably applied to the facts of the case.  Fed.R.Evid. 702.  In short, an

18  expert witness is one that "employ[s] specialized knowledge in [his or her]

19  testimony."  *Crime, Justice & Am., Inc. v. Smith*, 2014 U.S. Dist. LEXIS 141388, at

20  *9 (E.D. Cal. Oct. 2, 2014) (contrasting a lay opinion, which "is rationally based on

21  the witness's perception and not based on scientific, technical, or other specialized

22  knowledge.").  A party cannot avoid its Fed.R.Civ.P. 26(a)(2) disclosure

23  requirements or the requirements of Fed.R.Evid. 702 "through the simple expedient

24  of proffering an expert in lay witness clothing."  *Therapeutics, Inc. v. Foley &

25  Lardner, LLP*, 2008 U.S. Dist. LEXIS 51171, at *6 (S.D. Cal. July 2, 2008).

26           There can be no dispute that Mr. Nash's proposed testimony is based on his

27  specialized knowledge, not on his rational perception of the facts at issue.  Mr. Nash

28  is not a percipient witness.  He did not witness any of the conduct that gives rise to

-13-

BTL's claims.  In fact, based on the Nash Financial Reports, it does not appear that Mr. Nash ever even viewed the *Twiharder* film.  Mr. Nash was retained by BTL after it filed the First Lawsuit to provide sales projections for 20 films other than BTL's film *Twiharder*.  (Dkt. 75-33, pp. 17-26.)[6]

The Nash Financial Reports – produced by BTL four business days before the close of discovery – confirm that Mr. Nash's testimony is subject to Fed.R.Evid. 702.  According to the documents, Mr. Nash and his company, Nash Information Services, LLC, have, since 1997, "developed its Movie Industry Model, a sophisticated tool for analyzing past and future performance of movies, including ancillary revenue through DVD and Blu-ray sales and rentals, TV sales, and foreign revenues."  (Dkt. 75-33, p. 1.)  The Nash Financial Reports identify, in basic terms, what Mr. Nash refers to as the "Sales Projection Methodology," which describes a specialized methodology used to "produce a model of the financial performance of a 'typical' movie of this type," which apparently means a movie of *Twiharder*'s "type."  (Dkt. 75-3, p. 2; *see also* Dkt. 75-3, p. 3 (estimates produced using "Nash Information Services, LLC's analytical models".))

Because any testimony provided or evidence created by Mr. Nash was done after the fact, at BTL's request, and is based, not on Mr. Nash's rational perception of the facts at issue, but instead on Mr. Nash's alleged specialized knowledge and expertise, his testimony qualifies as expert opinion that should have been disclosed under Fed.R.Civ.P. 26(a)(2).  *See, e.g.*, *Crime, Justice & Am., Inc*., 2014 U.S. Dist.

---

[6]   As far as Summit can tell, Mr. Nash was not aware that he was preparing sales projections to establish BTL's lost profit damages.  In fact, the Nash Financial Reports appear to have been created for the purposes of presenting to potential investors in *Twiharder*.  (*See, e.g.*, Dkt. 75-33, p. 1 ("The projection both helps to set expectations for investors, and is also useful when negotiating with potential distributors.").)  Furthermore, the Nash Financial Reports make it clear that "the sales projection is *not* a predication of how much a particular movie is going to make."  (Dkt. 75-33, p. 4.)

LEXIS 141388, at **8-9 ("Plaintiffs concede their witnesses are being offered for their extensive knowledge and backgrounds in law enforcement to conclude that CJA does not pose a security risk to jails.  Thus, these witnesses are expert witnesses who employ specialized knowledge in their testimony.  Specifically, Kenneth Kerle and Daniel Vasquez have never observed CJA circulating in jails. They do not have personal knowledge of its effects on jail security.  They simply base their opinions on a review of the publication."); *Humboldt Baykeeper v. Union Pac. R.R. Co.*, 2010 U.S. Dist. LEXIS 52182, at **4-5 (N.D. Cal. May 27, 2010) (disclosure required where testimony not based on percipient knowledge but in on witness's expertise).

### 2. BTL's Failure To Disclose Mr. Nash As An Expert Witness Is Not Substantially Justified Or Harmless

There can be no dispute that BTL failed to disclose Mr. Nash.  BTL cannot meet its burden and prove that such failure to disclose was neither substantially justified nor harmless.

#### a. There is no Justification for BTL's Failure to Disclose Mr. Nash and the Nash Financial Reports under Fed.R.Civ.P. 26.

For the reasons stated above in Section III.A.II and Summit's Motion *in Limine* No. 1, BTL has no excuse for not disclosing Mr. Nash under Fed.R.Civ.P. 26.

#### b. BTL's Failure to Comply with Fed.R.Civ.P. 26 is not Harmless; Rather it Substantially Prejudices Summit

Trial is scheduled to begin on November 25, 2014, less than four weeks from the date of this motion.  Thus, even if the Court wanted to authorize Summit to take Mr. Nash's deposition or seek other related discovery, there is no time to do so without a continuance.  Even if this motion were heard and decided prior to trial, and the Court decided to allow Summit to take expert discovery, Summit would still have to prepare for an expert deposition while preparing for trial, and would also be foreclosed from hiring, consulting and disclosing its own experts.  In other words,

short of a long continuance of the trial date, there is no remedy for the prejudice caused by BTL's failure to properly and timely disclose Mr. Nash and the Nash Financial Reports.  *See*, *e.g.*, *Emmpresa Cubana del Tabaco v. Culbro Corp.*, 213 F.R.D. 151, 159-160 (S.D.N.Y. 2003) (excluding witnesses that were not properly disclosed, in part, because "[t]he prejudice is not limited to the fact that the parties would have to squeeze in two depositions in the two-month period before trial…. [I]t is clear that even the bare minimum of discovery required by fairness would at the very least severely hamper trial preparation and likely could not be completed in the two months before the trial is set to begin.").  Courts routinely find prejudice in these circumstances and excluded expert testimony.  *See Yeti by Molly*, 259 F.3d at 1107 (9th Cir. 2001) ("Plaintiffs received Vuckovich's report one month before they were to litigate a complex case.  To respond to it, plaintiffs would have had to depose Vuckovich and prepare to question him at trial.  *See NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 786 (7th Cir. 2000) ('Without even a preliminary or draft supplemental expert witness report from [the expert], NutraSweet was greatly hampered in its ability to examine him about his analysis of the site work.  In these circumstances, the use of the 'automatic' sanction of exclusion was not an abuse of discretion.' (citations omitted)).  We affirm the decision to exclude Vuckovich's testimony."); *Tyco Thermal Controls, Inc. v. Redwood Industrials, LLC*, 2012 U.S. Dist. LEXIS 91598, at *7 (N.D. Cal. June 29, 2012) ("[G]iven that fact and expert discovery have long since closed, coupled with the imminent trial date, it would be unduly prejudicial to permit the trial testimony of these previously undisclosed witnesses—none of whom Rowe has had the opportunity to depose."); *Internet Servs. LLC v. Immersion Corp.*, 2008 U.S. Dist. LEXIS 120563, at **5-6 (N.D. Cal. May 13, 2008) (excluding expert testimony based prejudice caused by delayed disclosure); *Estate of Gonzalez*, 2007 U.S. Dist. LEXIS 84390, at **26-27 (C.D. Cal. June 28, 2007) ("Even were Defendants to depose Hunt, moreover, this would not cure the prejudice they have suffered.  Deposing Hunt will not enable

1  Defendants to challenge, with documentary evidence or rebuttal expert testimony,

2  the numerous assumptions underlying her calculation of Gonzalez's lost earnings

3  potential. As a result, exclusionary sanctions pursuant to Rule 37(d)(1) are

4  warranted."); *see also Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1062

5  (9th Cir. 2005) ("Disruption to the schedule of the court and other parties in that

6  manner is not harmless."); *Allegro Ventures, Inc. v. Almquist*, 2014 U.S. Dist.

7  LEXIS 64008, at \*\*37-38 (S.D. Cal. May 8, 2014) (excluding three expert witnesses

8  that plaintiff included on his witness list but failed to disclose pursuant to

9  Fed.R.Civ.P. 26(a)(2)).

10  **IV.    CONCLUSION**

11        For the above reasons, Summit's Motion *in Limine* No. 2 should be granted in

12  its entirety, and Mr. Nash's testimony and the Nash Financial Reports and any

13  testimony relating thereto should be excluded.

14                                   Respectfully submitted,

15                                   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

16

17  Dated:  October 28, 2014        By: /s/ Jill M. Pietrini
                                          Jill M. Pietrini
18

19                                   Attorneys for Defendant and Counterclaimant

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 1901 Avenue of the Stars, Suite 1600, Los Angeles, CA 90067-6055.

On October 28, 2014, I served true copies of the following document(s) described as **DEFENDANT AND COUNTERCLAIMANT SUMMIT ENTERTAINMENT, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION *IN LIMINE* NO. 2 TO EXCLUDE FINANCIAL REPORTS BY NASH INFORMATION SERVICES, LLC AND ANY TESTIMONY THEREON** on the interested parties in this action as follows:

| | |
|---|---|
| James H. Freeman, Esq. | Steve Lowe, Esq. |
| J.H. Freeman Law | LOWE & ASSOCIATES, P.C. |
| 3 Columbus Circle, 15 FL | 11400 Olympic Boulevard, Suite 640 |
| New York, NY 10019 | Los Angeles, CA  90064 |
| Tel:  (212) 931-8535 | Tel:  (310) 477-5811 |
| Fax:  (212) 496-5870 | Fax:  (310) 477-7672 |
| james@jhfreemanlaw.com | steve@lowelaw.com |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 28, 2014, at Los Angeles, California.


/s/ Latrina Martin
Latrina Martin

SMRH:433627421.3

-18-