JAMES H. FREEMAN
*Admitted Pro Hac Vice*
JH FREEMAN LAW
3 Columbus Circle, 15th Floor
New York, NY 10019
Tel: (212) 931-8535
james@jhfreemanlaw.com

STEVE LOWE (Cal. Bar #122208)
LOWE & ASSOCIATES, P.C.
11400 Olympic Blvd., Suite 640
Los Angeles, CA 90064
Tel: (310) 477-5811 / Fax: (310) 477-7672
steven@lowelaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| BETWEEN THE LINES PRODUCTIONS, LLC, a California limited liability Company, | Case No. 2:14-cv-00104-R (PJWx) |
| Plaintiff, | Hon. Judge Manuel L. Real |
| vs. | **PLAINTIFF and COUNTER-DEFENDANT BETWEEN THE LINES PRODUCTIONS LLC'S OPPOSITION AND OBJECTIONS TO SUMMIT's MOTIONS IN LIMINE #1-14** |
| LIONS GATE ENTERTAINMENT CORP., a British Columbia corporation, and SUMMIT ENTERTAINMENT, LLC, a Delaware limited liability company | |
| Defendants. | <u>Hearing Date:</u> |
| -------------------------------------- | Date: November 25, 2014 |
| SUMMIT ENTERTAINMENT, LLC, | Time: 10:00 a.m. |
| Counterclaimant | Ctrm: 8 |
| vs. | Judge: Hon. Manuel L. Real |
| BETWEEN THE LINES PRODUCTIONS, LLC | |
| Counter-Defendants | |

Plaintiff Between the Lines Productions, LLC hereby file their Preliminary Objections and Responses to Defendant Summit Entertainment, LLC's fourteen dispositive motions stylized as "Motions in *Limine*"  In support thereof, BTLP respectfully state as follows:

## PRELIMINARY STATEMENT

In its bid to escape liability for its tortious conduct and impede BTLP's efforts to vindicate the public interest against oppressive IP Enforcers, owned by foreign entities, who leverage U.S.-issued government licenses to censor the viewpoints and socio-political messages of private U.S. citizens, Summit has filed 14 "Motions *in Limine*" – none of which are constitutionally valid or procedurally proper  -  asking the Court to exclude <u>relevant</u> evidence that is probative of BTLP's claims and defenses.

All of these motions must be denied under the Seventh Amendment of the U.S. Constitution, which reserves the fact-finding function in civil trials to the jury, which is constitutionally enshrined with the role to weigh ALL relevant and probative evidence in this proceeding.  Further, because it is unduly burdensome and harassing to compel BTLP to file 14 opposition briefs in a period of 7 days, BTLP reserves the right to supplement its objections and responses.  BTLP further states as follows:

1
2

## BTLP's GENERAL OBJECTIONS TO SUMMIT's MOTIONS IN LIMINE 1-14

3
4
5

1.   **With respect to Probative Evidence Proffered in Civil Actions Based on Common Law Suits, the Seventh Amendment Trumps ALL Exclusionary Rules Under the Federal Rules of Evidence and Fed. R. Civ. 26 and 37**

6

The Seventh Amendment, in its entirety, provides,

7
8
9

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.  U.S. CONST. amend. VI.

10
11
12
13
14
15
16
17
18
19

As noted by Justice Story, "the trial by jury is justly dear to the American people . . . one of the strongest objections originally taken against the Constitution of the United States was the want of an express provision securing the right of trial by jury in civil cases. As soon as the Constitution was adopted, this right was secured by the 7th Amendment of the Constitution proposed by Congress; and which received an assent of the people so general as to establish its importance as a fundamental guaranty of the rights and liberties of the people.  Parsons v. Bedford, 3. Pet. 433, L. ed 732 (1830) (Justice Story)

20
21
22
23
24

The U.S. Supreme Court holds that the Seventh Amendment requires "that questions of fact in common law actions shall be settled by a jury, and that the court shall not assume directly or indirectly to take from the jury or to itself such prerogative."  Walker v. New Mexico & S.P.R. Co., 165 U.S. 593, 596 (1897) (Justice Brewer).

25
26
27
28

"Our Constitution and the common-law traditions it entrenches, however, do not admit the contention that facts are better discovered by judicial inquisition than by adversarial testing before a jury."  Blakely v.

*Washington*, 542 U.S. 296 (2004). The role of the jury as the exclusive fact finder is constitutionally enshrined.  *See, e.g.*, *Id.* at 313; Jones v. United States, 526 U.S. 227, 244 (1999).  As noted by Justice Rehnquist,

> It may be that if this Nation were to adopt a new Constitution today, the Seventh Amendment guaranteeing the right of jury trial in civil cases in federal courts would not be included among its provisions.  But any present sentiment to that effect cannot obscure or dilute our obligation to enforce the Seventh Amendment, which was included in the Bill of Rights in 1791 and which has not since been repealed in the only manner provided by the Constitution for repeal of its provisions.  The guarantees of the Seventh Amendment will prove burdensome in some instances; the civil jury surely was a burden to the English governors who, in its stead, substituted the vice-admiralty court. But, as with other provisions of the Bill of Rights, the onerous nature of the protection is no license for contracting the rights secured by the Amendment.

Parklane Hosiery Co. v. Shore, 39 U.S. 322, 338, 346 (1979) (Rehnquist, J., dissenting).

Accordingly, the exclusion of relevant, probative evidence in a CIVIL trial, by means of "motions in limine" is an unconstitutional encroachment on the role of the jury as fact-finder in civil trials and should not be countenanced in this proceeding, which is a matter of public interest.  See generally, Kenneth S. Klein, *Why Federal Rule Of Evidence 403 Is Unconstitutional, And Why That Matters*, UNIVERSITY OF RICHMOND LAW REVIEW ASSOCIATION (2013).

**2.    None of the Evidence Summit Seeks to Exclude is "Clearly Inadmissible on All Potential Grounds"**

"Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." Wechsler v.

Hunt Health Sys., Ltd., 381 F. Supp. 2d 135, 140 (S.D.N.Y. 2003) (quoting Baxter Diagnostics, 1998 WL 665138, at *3).

**3.    Ruling on the Motions *In Limine* Should Be Deferred Until Trial So As to Afford the Court an Opportunity to View the Evidence in Context**

In considering a motion *in limine*, courts may reserve judgment until trial, so that the motion is placed in the appropriate factual context.  See Nat'l Union Fire Ins. Co., 937 F. Supp. at 287 (citing Hawthorne Partners v. AT&T Tech., Inc., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (stating that a motion *in limine* to exclude evidence should be granted only "when evidence is clearly inadmissible on all potential grounds . . . [and] [u]nless evidence meets this high standard, evidentiary rulings should be deferred until trial")); In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (if the context of trial would provide clarity, the Court may defer the issues raised on a motion in limine until trial).

After all, a "ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the [court's] discretion." United States v. Yannott, 42 F.3d 999, 1007 (6th Cir. 1994), cert. denied, 513 U.S. 1182 (1995).  Further, the trial court can "change its ruling at trial for whatever reason it deems appropriate." Id.

**4.    Motions *in Limine* Should NOT be Used as an Excuse to File Dispositive Motions Disguised as Motions *In Limine***

"The purpose of a motion in limine is to allow the trial court to rule in advance on the admissibility and relevance of certain forecasted evidence." United States v. Chan, 184 F.Supp.2d 337, 340 (S.D.N.Y. 2002). Motions *in limine* are meant to deal with discrete evidentiary issues related to trial, and are not another excuse to file dispositive motions disguised as motions *in limine.* Dunn ex rel. Albery v. State Farm Mutual Auto. Ins. Co., 264 F.R.D. 266, 274 (E.D. Mich. 2009). "It is well settled that motions *in limine* address evidentiary questions and are inappropriate devices for resolving substantive issues, such as the sufficiency of the evidence to support a claim or defense." Bowers v. Nat'l Collegiate Athletic Ass'n, 563 F. Supp. 2d 508, 532 (D.N.J. 2008) (citations and internal quotations omitted). "[A] motion in limine should not be used to resolve factual disputes or weigh evidence [internal citation omitted]." C & E Services, Inc. v. Ashland, Inc., 539 F.Supp.2d 316, 323 (D.D.C. 2008); see also Provident Life & Acc. Ins. Co. v. Adie, 176 F.R.D. 246, 250 (E.D.Mich.1997) ("If [plaintiff] wanted to preclude [defendant] from raising these defenses at trial because there was no genuine issue of material fact as to them, then he should not have filed a motion *in limine* on the eve of trial, but instead should have filed a summary judgment motion")

"Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of material fact, a motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Louzon v. Ford Motor Co., _ F.3d _ (6th Cir. June 4, 2013) (No. 11-2356) (citing Luce v. United States, 469 U.S. 38, 40 n.2 (1984); Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990) (Trial court erred by dismissing claim following rulings

on motions *in limine* because a basic purpose of *in limine* motions, as contrasted with those for summary judgment was that the in limine motions failed to provide notice sufficiently in advance of dismissal and did not allow the opposing party adequate opportunity to marshal evidence of his claim.); Figgins v. Advance Am. Cash Advance Centers of Michigan, Inc., 482 F. Supp. 2d 861, 870 (E.D. Mich. 2007) ("To the extent that the defendants are arguing that the facts are insufficient to allow the plaintiff to seek punitive damages from the jury, that argument must be rejected because it should have been raised in a motion for summary judgment."

**5.    FRE 403's standard of "unfair prejudice" or "confusion" should not be employed to exclude relevant evidence from a civil proceeding where the defendant (Summit) only stands to lose money.**

FRE 403 should only be invoked in criminal proceedings where a defendant may be exposed to deprivation of life, liberty or personal property.  Excluding evidence in commercial litigation on grounds that it will emotionally impact the jury or confuse the jury makes absolutely no sense and does not comport with the Seventh Amendment.

**BTLP's SPECIFIC OBJECTIONS TO SUMMIT'S MOTIONS *IN LIMINE***

**BTLP reserves the right to supplement these objections at any time as BTLP has not been afforded the full and fair opportunity to address 14 dispositive motions in a period of five business days.**

**1)    Motion *in Limine* #1: Exclusion of BTLP's Trial Witnesses [R. 103]**

◆  Any alleged violation of Rule 26(a) was both justified and harmless.  Finley v. Marathon Oil Co., 75 F.3d 1225, 1230 (7th Cir. 1996).

1
2
3

 ◆ Summit will have the full and fair opportunity to cross-examine any of the trial witnesses listed in BTLP's witness list and therefore cannot be said to suffer any substantive or procedural prejudice.

4
5

 ◆ The identity of a witness who has unfavorable information need not be provided in the Rule 26(a)(1)(A)(i) initial disclosures,

6
7
8
9
10
11
12
13
14
15
16
17
18
19

 ◆ At the time BTLP prepared its initial disclosures on or about July 16, 2014, BTLP has a reasonable expectation, based on the parties' Joint Report of Early Meeting Under Rule 26(f), that the discovery cut-off was then nine (9) months away (April 27, 2015).  [R. 47 PageID#: 1975]. Accordingly, BTLP believed there would be ample opportunity to update the initial disclosures during the discovery period.  However, BTLP did not anticipate that the discovery cut-off date would be accelerated by seven (7) months and in the flurry of activity taking place during the abbreviated discovery period, BTLP overlooked that its initial disclosures needed to be updated and completed. BTLP's alleged failure to update its initial disclosures served on July 16, 2014 was wholly inadvertent. Moreover, it was excusable under the circumstances given the Court's implementation of the Rocket Docket.

20
21
22
23
24
25
26
27

 ◆ Although Summit noticed a handful of depositions before the discovery cut-off date of October 6, 2014, it cancelled every deposition that it noticed, thus demonstrating that Summit never had the *bona fide* intent to take depositions in this proceeding.  Had the additional 19 witnesses been listed in the Rule 26 initial disclosures, Summit would not have deposed them anyway.  Therefore, its claim to exclude ANY trial witnesses at this juncture is disingenuous and calculated to prevail through procedural default rather than on the merits.

28

1
2
3
4

◆ The Trial Court's implementation of the "Rocket Docket" to facilitate speedy trial champions the ideal that direct and cross-examination of Trial Witnesses before a live jury is a superior method of ascertaining the Truth than Costly, Time-Consuming Depositions.

5
6
7

◆ The purpose of the civil justice system is to seek the Truth in a transparent, open and public forum; therefore, the exclusion of BTLP's trial witnesses will render the proceeding less transparent;

8
9
10
11

◆ Cases should be tried based on the substantive merits of the claims; not based on the four corners of Rule 26 initial disclosures, which are by their very nature "initial" and therefore, not final.

12
13

◆ Rule 26 initial disclosures should be used as a substitute for BTLP's pleadings or [proposed] Final Pre-Trial Conference Order.

14
15
16
17

◆ The 19 witnesses in dispute were disclosed eight (8) weeks before trial, so there is no surprise or "unfair prejudice."  Eight weeks is ample time for Summit to prepare any cross-examination questions.

18
19
20
21
22
23

◆ Because Summit's counterclaims threaten to divest BTLP of its rightful ownership to personal property, exclusion of BTLP's trial witnesses will impinge BTLP's Fifth Amendment and Fourteenth Amendment rights to due process of law, which guarantee BTLP a fair opportunity to be heard on the merits of its claims through the introduction of probative evidence.

24
25

◆ The overbroad application of the "hearsay rule" of evidence (FRE 801), which Judge Richard Posner (7th Cir.) recently described as "archaic"

26
27
28

and "too complex,"[1] militates in favor of admitting BTLP's trial witnesses to counterbalance any potential exclusion of relevant documentary evidence obtained through the public record.

♦ Exclusion of any BTLP trial witnesses who are located within the Court's subpoena power will defeat the purpose of Summit's motion to transfer venue under 28 U.S.C. 1404(a), which was predominantly based on Summit's representations to the Transferor Court that the Central District of California would be a more convenient forum for trial witnesses than the Southern District of New York.

♦ BTLP had no intent to use the 19 witnesses at the time it filed its initial disclosures in July 2014 and updated its witness list as soon as it knew that such trial witnesses could be helpful.

♦ BTLP supplemented its witness list only three weeks after the Court denied its motion to add seven substantive claims to its pleading, which is not an unreasonable delay.

♦ Rule 26 requires that a party supplement its initial disclosures throughout the course of litigation at appropriate intervals  whenever it learns that the information originally provided turns out to be incomplete or  incorrect. See Fed. R. Civ. P. 26(e)(1). BTLP promptly provided disclosure of the  witnesses at the appropriate interval, within 3 weeks of Court's denial of BTLP's motion to amend, and within six weeks of the Rule 16 initial case management conference order

---

[1]http://www.abajournal.com/news/article/posner_questions_basis_for_archaic_hearsay_rule_proposes_flexible_approach/ (Feb. 18, 2014)

**(2)** <u>Motion Limine # 2</u> - Exclusion of Financial Reports by Nash Information Services, LLC and Any Testimony Thereon [R. 104]

◆ Summit irrevocably waived any objections to the admissibility of the Nash Box Office Reports because it intentionally obstructed BTLP's written demands for discovery of documents relating to *Breaking Wind's* gross revenues.

◆ Fundamental fairness dictates that the Nash Box Office Reports be submitted to the Jury for an assessment of damages.  Summit will have the opportunity to discredit or challenge such numbers upon presentation to the Jury, so there is no rationale to exclude such evidence.

◆ BTLP never hired Mr. Nash as an expert witness, never intended to hire Mr. Nash as an expert witness, and does <u>not</u> intend to call Mr. Nash as an expert witness at trial because Mr. Nash's business model does not permit him to testify as an expert.

◆ BTLP does not intend to call Mr. Nash as a lay witness and hereby withdraws him from BTLP's trial witness list.

◆ BTLP does intend to introduce evidence of the Nash Box Office Reports to show box office revenues of comparable movie titles to *Twiharder* marketed via similar or identical distribution channels.

◆ BTLP purchased the Nash Box Office Reports as part of an arms-length business transaction.

◆ Financial data about the comparable movie titles listed in the Nash Box Office Reports are available to ALL members of the public for a reasonable fee.  Mr. Nash did not perform any calculations or estimates on behalf of BTLP.  Rather, BTLP submitted a list to Mr. Nash of what BTLP

reasonably believed to be comparable movie titles selected from on-line retailers such as iTunes.com

◆ Summit's assumption that "Mr. Nash was not aware that he was preparing sales projections to establish BTL's lost profit damages" is fairly accurate. BTLP did not ask Mr. Nash to "prepare" any damages calculations; rather BTLP simply paid Mr. Nash's firm to compile a database of comparable movie titles indicating sales projections and actual revenues earned.

◆ Box office receipts of blockbuster movies are within the common knowledge of ordinary lay persons, who do not need an expert to explain how box office receipts are tabulated or why movie spoofs occupy the same relevant market. A motion picture's financial performance at the box office is widely reported in mainstream media and are matters of common knowledge within the everyday experience of objective observers.

◆ BTLP disclosed the *existence* of the Nash Reports to Lionsgate / Summit during a full-day mediation held in Los Angeles in September 2013; the numbers were used as part of settlement negotiations. Therefore, any claims of "surprise" or "unfair prejudice" are entirely disingenuous.

◆ BTLP disclosed the Nash Box Office Reports to Lionsgate / Summit before BTLP's responses to Defendants' (untimely) written discovery requests were due.

◆ Summit has failed to establish why the admission of unquestionably relevant evidence at trial by jury places Summit at risk of "unfair prejudice, confusion of issues, misleading the jury, or waste of time."

1
2
3
4

 ◆ Permitting Summit to conduct additional discovery concerning the Nash Box Office Reports is preferable to wholesale exclusion of evidence that is unquestionably relevant and probative of the damages BTLP sustained as a result of Summit's unlawful conduct.

5
6
7
8

 ◆ Issuing a limiting instruction on the scope of use of the Nash Box Office Reports at trial is preferable to wholesale exclusion evidence that is unquestionably relevant and probative of the damages BTLP sustained as a result of Summit's unlawful conduct.

9
10
11
12
13

 ◆ Conducting a bench trial on the issues raised by the Nash Box Office Reports is preferable to wholesale exclusion of evidence that is unquestionably relevant and probative of the damages BTLP sustained as a result of Summit's unlawful conduct.

14
15

**(3)   Motion in Limine No. 3 - Motion to Exclude "Settlement Negotiations"**

16
17
18
19
20
21
22
23
24
25
26
27

As per the Committee Notes on Rules—2006 Amendment, Rule 408 is inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim. See, e.g., Athey v. Farmers Ins. Exchange, 234 F.3d 357 (8th Cir. 2000) (evidence of settlement offer by insurer was properly admitted to prove insurer's bad faith); Coakley & Williams v. Structural Concrete Equip.,973 F.2d 349 (4th Cir. 1992) (evidence of settlement is not precluded by Rule 408 where offered to prove a party's intent with respect to the scope of a release); Cates v. Morgan Portable Bldg. Corp., 708 F.2d 683 (7th Cir. 1985) (Rule 408 does not bar evidence of a settlement when offered to prove a breach of the settlement agreement, as the purpose of the evidence is to

28

prove the fact of settlement as opposed to the validity or amount of the underlying claim); Uforma/Shelby Bus. Forms, Inc. v. NLRB, 111 F.3d 1284 (6th Cir. 1997) (threats made in settlement negotiations were admissible; Rule 408 is inapplicable when the claim is based upon a wrong that is committed during the course of settlement negotiations).

Although the literal language of Rule 408 broadly declares that "[e]vidence of conduct or statements made in compromise negotiations is likewise not admissible," courts have held that Rule 408 is ... inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions; e.g., libel, assault, breach of contract, unfair labor practice, and the like.... Rule 408 does not prevent the plaintiff from proving his case; wrongful acts are not shielded because they took place during compromise negotiations.  23 Charles Alan Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5314 (1st ed. 1980) (emphasis added) (footnotes omitted).

The inapplicability of Rule 408 to suits seeking to vindicate wrongs committed during settlement discussions derives from the more general principle that "Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim." Id. at n. 25. Evidence of the compromise of a claim different than the claim currently in dispute therefore is admissible unless "the compromise evidence require[s] an inference as to the offeror's belief concerning the validity or invalidity of the compromised claim." See id. at § 5308. Accordingly, Rule 408 does not exclude evidence of alleged threats to retaliate for protected activity when

the statements occurred during negotiations focused on the protected activity and the evidence serves to prove liability either for making, or later acting upon, the threats. See <u>Vulcan Hart Corp. (St. Louis Div.) v. NLRB</u>, 718 F.2d 269, 277 (8th Cir.1983) (Rule 408 did not bar evidence of demand during negotiations to settle grievance that employee resign his union office when General Counsel did not seek to prove validity of grievance).

First, as a preliminary matter, Summit irrevocably waived and forfeited any right to exclude the evidence of the C&D letters by claiming that the C&D letters were protected by First Amendment under the *Noerr-Pennington* doctrine. If these communications are protected by the First Amendment, then they are subject to public scrutiny and analysis by the Jury of Summit's peers within the realm of the public forum. Summit cannot have it both ways.

Second, the C&D letters are not being used to prove or disprove validity of Summit's copyright or trademark infringement claims against BTLP. Rather they is being used to prove the element of "disinterested malevolence" to support BTLP's *prima facie* tort claim. As the prima facie tort claim was not a part of any pre-litigation settlement negotiation or offer, the C&D letters are admissible for the purpose of showing Summit's disinterested malevolence as well as for the purpose of assessing BTLP's punitive damages claims.

Third, Summit never intended to negotiate in good faith. Therefore, the C&D letters cannot be accurately described as "settlement negotiations." They were calculated to destroy BTLP and its intellectual property assets and no other reason.

Further, Rule 408 is inapplicable when evidence of the compromise is offered to prove notice. *See, e.g., United States v. Austin*, 54 F.3d 394 (7th Cir. 1995) (no error to admit evidence of the defendant's settlement with the FTC, because it was offered to prove that the defendant was on notice that subsequent similar conduct was wrongful); *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987) (in a civil rights action alleging that an officer used excessive force, a prior settlement by the City of another brutality claim was properly admitted to prove that the City was on notice of aggressive behavior by police officers).

**(3)      Motion in Limine No. 4-14**

**The remainder of Summit's Motions in *Limine* are Calculated to Harass BTLP and do not want warrant serious consideration.   ALL of the evidence submitted by BTLP is relevant to its claims and defenses and should be submitted to the Jury pursuant to the Seventh Amendment. These motions should be denied, or on the alternative, deferred until trial.**

**BTLP reserves the right to supplement these objections as BTLP has not been provided a full and fair opportunity to state its objections to 14 dispositive motions.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CONCLUSION</u>

Based on the foregoing, Defendants' Motions Motions in Limine Should be DENIED or DEFERRED.  The Evidence Should be Presented to the Jury.

<u>Dated</u>: November, 2014

Respectfully Submitted

**/jameshfreeman/**
James H. Freeman, Esq.
*Counsel for Plaintiff BTLP*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this **4th day** of **November, 2014**, a true and correct copy of the foregoing was transmitted via ECF to the following counsel of record for Defendants:

Paul Bost, Esq.
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Tel: (310) 228-2249
Fax: (310) 228-3960
pbost@sheppardmullin.com

Jill Pietrini, Esq.
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Tel: (310) 228-2249
Fax: (310) 228-3960
jpietrini@sheppardmullin.com

*Attorneys for Defendants Lionsgate*
*Entertainment Corp.and Summit Entertainment LLC*

by: */jameshfreeman/*
James H. Freeman, Esq.

*Attorney for Plaintiff Between the*
*Lines Productions, LLC*