1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2     Including Professional Corporations
   JILL M. PIETRINI (Cal. Bar No. 138335)
3  jpietrini@sheppardmullin.com
   PAUL A. BOST (Cal. Bar No. 261531)
4  pbost@sheppardmullin.com
   BENJAMIN O. AIGBOBOH (Cal. Bar No. 268531)
5  baigboboh@sheppardmullin.com
   1901 Avenue of the Stars, Suite 1600
6  Los Angeles, California 90067-6055
   Telephone:  (310) 228-3700 / Facsimile: (310) 228-3701
7
   Attorneys for Defendant and
8  Counterclaimant Summit Entertainment
   LLC
9

10               UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                    WESTERN DIVISION

| | |
|---|---|
| 13  BETWEEN THE LINES<br>PRODUCTIONS, LLC a California<br>14  limited liability company, | Case No. 2:14-cv-00104-R (PJWx) |
| 15                Plaintiff, | **DEFENDANT AND**<br>**COUNTERCLAIMANT SUMMIT**<br>**ENTERTAINMENT, LLC'S**<br>**CONSOLIDATED REPLY BRIEF** |
| 16           v. | **IN SUPPORT OF MOTIONS**<br>***IN LIMINE* NOS. 1-14** |
| 17  LIONS GATE ENTERTAINMENT<br>CORP., a British Columbia corporation,<br>18  and SUMMIT ENTERTAINMENT, | Hon. Judge Manuel L. Real |
| LLC, a Delaware limited liability<br>19  company, | Hearing Date:   November 25, 2014<br>Time:              9:00 a.m. |
| 20                Defendants. | Ctrm:              8 |
| 21  ─────────────────────────<br>AND RELATED COUNTERCLAIMS.<br>22 | Complaint filed:      Dec. 16, 2013<br>Counterclaims filed:  Jan. 27, 2014<br>Trial Date:            Nov. 25, 2014 |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..............................................................................................1

II.     BTL'S "GENERAL OBJECTIONS" ARE IRRELEVANT AND
        UNAVAILING.................................................................................................2

        A.     The Seventh Amendment Does Not Apply To Bar Summit's
               Motions *In Limine* .................................................................................2

        B.     BTL' s Other "General Objections" Are Meritless ...............................2

III.    SUMMIT'S MOTIONS *IN LIMINE* SHOULD BE GRANTED ....................4

        A.     Summit's Motion *In Limine* No. 1 To Exclude Undisclosed
               Witnesses Should Be Granted.................................................................4

        B.     Summit's Motion *In Limine* No. 2 To Exclude The Nash
               Financial Reports Should Be Granted......................................................7

        C.     Summit's Motion *In Limine* No. 3 To Exclude Evidence Of
               Settlement Communications Should Be Granted .................................11

        D.     Summit's Motions *In Limine* Nos. 4-14 Should Be Granted...............13

IV.     CONCLUSION ..............................................................................................15

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

Cases

4

*Athey v. Farmers Ins. Exch.*
    234 F.3d 357 (8th Cir. 2000) ............................................................................... 13

5

6

*Carson Harbor Vill., Ltd. v. Unocal Corp.*
    2003 U.S. Dist. LEXIS 14438 (C.D. Cal. Aug. 8, 2003) ...................................... 4

7

8

*Coakley & Williams Constr., Inc. v. Structural Concrete Equipment, Inc.*
    973 F.2d 349 (4th Cir. 1992) ............................................................................... 12

9

*Emmpresa Cubana del Tabaco v. Culbro Corp.*
    213 F.R.D. 151 (S.D.N.Y. 2003) ........................................................................... 7

10

11

*Feinberg-Tomahawk v. City & County of San Francisco*
    2014 U.S. Dist. LEXIS 104194 (N.D. Cal. July 28, 2014) ................................. 13

12

13

*Frontline Med. Assocs., Inc. v. Coventry Health Car*
    263 F.R.D. 567 (C.D. Cal. 2009) ........................................................................... 7

14

15

*Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*
    2011 U.S. Dist. LEXIS 52792 (E.D. Cal. May 17, 2011) ................................ 4, 8

16

17

*Estate of Gonzalez v. Hickman*
    2007 U.S. Dist. LEXIS 84390 (C.D. Cal. June 28, 2007) ............................. 7, 10

18

19

*Naser v. Metro. Life Ins. Co.*
    2013 U.S. Dist. LEXIS 107706 (N.D. Cal. July 31, 2013) ................................... 9

20

*NutraSweet Co. v. X-L Eng'g Co.*
    227 F.3d 776 (7th Cir. 2000) ............................................................................... 10

21

22

*Toyrrific, LLC v. Karapetian*
    2013 U.S. Dist. LEXIS 54043 (C.D. Cal. Apr. 16, 2013) ................................ 7, 8

23

24

*Twin Labs., Inc. v. Weider Health & Fitness*
    900 F.2d 566 (2d Cir. 1990) ................................................................................ 12

25

26

*Zhang v. Am. Gem Seafoods, Inc.*
    339 F.3d 1020 (9th Cir. 2003) ............................................................................... 5

27

28

1

## **TABLE OF AUTHORITIES**
### (continued)

2

3
**Page(s)**

Other Authorities

4

Fed.R.Civ.P. 26(a)(1)(A)(i) .................................................................................4

Fed.R.Civ.P. 26(a)(1)(A)(iii) ..............................................................................7

Fed.R.Civ.P. 37(c)(1)..........................................................................................4

Fed.R.Evid. 408 .................................................................................................11

L.R. 7-9 ..............................................................................................................13

L.R. 11-8 ..............................................................................................................2

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.      **INTRODUCTION**

Plaintiff and Counter-Defendant Between the Lines Productions, LLC ("BTL") has filed *two* lawsuits against Defendant and Counterclaimant Summit Entertainment LLC ("Summit") and former Defendant Lions Gate Entertainment Corp ("Lions Gate").[1]  In the first, BTL asserted meritless antitrust claims and sought $500 million in damages.  After BTL voluntarily dismissed the first lawsuit – in order to forum shop and avoid dismissal of its antitrust claim – BTL filed the current lawsuit, alleging a claim for "prima facie tort" under New York law for which it now apparently seeks hundreds of millions of dollars in lost profits and lost business opportunity damages.  In both lawsuits, BTL has proven tireless in seeking to recover the unjustified and unsupportable damages it seeks, repeatedly filing "vexatious and meritless filings" (Dkt. 66 at 2:1-5 and 2:25-3:10), engaging in procedural and substantive gamesmanship, and generally acting in "bad faith."  (*Id.*)

What BTL *has not* done is comply with its obligations under the Federal Rules of Civil Procedure, the Local Rules and the Court's orders, or attempt to present its case through relevant, admissible evidence.  BTL has repeatedly flouted the Federal and Local Rules and orders, intentionally withheld information and witnesses it had an obligation to disclose, and now attempts to rely on irrelevant and otherwise inadmissible evidence to "prove" its claims for hundreds of millions of dollars in damages.  BTL does not get to stand up and say anything to the jury.  Its claims must be supported by admissible evidence and properly disclosed witnesses. Summit's motions *in limine* seek to cut through BTL's machinations, and to hold BTL accountable for its unjustified conduct and refusal to comply with the Federal Rules of Civil Procedure, Federal Rules of Evidence, Local Rules and this Court's

---

[1]      The Court granted Lions Gate's motion for summary adjudication as to all claims on October 20, 2014.  (Dkt. 95.)  Lions Gate is no longer a party.

1  Orders.[2]

2  **II.      BTL'S "GENERAL OBJECTIONS" ARE IRRELEVANT AND
          UNAVAILING**

3

4        **A.      The Seventh Amendment Does Not Apply To Bar Summit's
                Motions *In Limine***

5        BTL argues that each of Summit's motions *in limine* should be denied

6  because "the Seventh Amendment trumps all exclusionary rules under the Federal

7  Rules of Evidence and Fed. R. Civ. [P] 26 and 37." (Opp. at 3:1-5.) BTL cites no

8  authority for its contention that all federal evidentiary rules and rules of civil

9  procedure are rendered moot by the United States Constitution, nor is Summit aware

10  of any. The Seventh Amendment guarantees a right to a jury trial. It does not

11  guarantee that any document or witness testimony is admissible. BTL's purported

12  construction of the Seventh Amendment renders the Federal Rules of Evidence and

13  Federal Rules of Civil Procedure completely irrelevant and useless. BTL cites no

14  authority for this farfetched proposition.

15        **B.      BTL' s Other "General Objections" Are Meritless**

16        BTL appears to argue – an argument that solely consists of a quotation from a

17  case in the Southern District of New York – that the Court should deny each of

18  Summit's motions *in limine* because "none of the evidence [that] Summit seeks to

19  exclude is 'clearly inadmissible on all potential grounds.'" (Opp. at 3:23-4:2.) Even

20  if treated as binding (it is not), the Southern District of New York language has no

21  bearing here. BTL has not even attempted to demonstrate how the evidence Summit

22  seeks to exclude is admissible. BTL cannot simply ask the Court and Summit to

23  _____

24  [2]      In opposing Summit's motions *in limine*, BTL has again failed to comply with
     the Local Rules and the Court's orders. BTL's opposition does not include a

25  statement of facts and, despite being 16 pages long and citing to dozens of cases
     from as many jurisdictions and other irrelevant authorities, does not include a table

26  of contents or table of authorities. L.R. 11-8. BTL apparently believes that the

27  Local Rules do not apply to it and/or its counsel because its counsel is a one-man

28  shop. BTL is wrong. The Local Rules do not have a carve out for sole practitioners.

1  determine why *its* evidence is admissible.  BTL bears that burden.  Furthermore,

2  BTL's argument would render the evidentiary exclusions mandated by Fed.R.Civ.P.

3  37(c) moot, as it would prohibit courts from excluding undisclosed evidence that

4  was otherwise admissible.

5       BTL also asks the Court to defer ruling on Summit's motions *in limine* until

6  trial.  (Opp. at 4:4-24.)  There is no reason to do so.  The "factual context" of each

7  piece of evidence that Summit seeks to exclude is clear.  For example, BTL intends

8  to offer the Nash Financial Reports and other evidence of allegedly "comparable"

9  films to prove its damages, and it intends to offer the inadmissible hearsay opinion

10  evidence in scholarly articles and elsewhere to establish that *Twiharder* is a legal

11  parody.  No additional "context" is necessary.  BTL has failed to identify any

12  evidence that should be judged in "context," or why such "context" is necessary.

13  The Court should not accept BTL's invitation to postpone ruling on Summit's

14  motions.  BTL's request is just a stalling tactic by BTL – conduct BTL has

15  repeatedly engaged in in the matter.  (*See*, *e.g.*, Dkt. 66, 79, 101-2.)  Motions *in*

16  *limine* are designed to forestall the introduction of irrelevant or otherwise

17  inadmissible evidence, and to streamline and properly limit the scope of trial.

18  Summit's motions serve this purpose.  There is no reason to defer ruling on them.

19       BTL further appears to argue – again, solely through case citations – that

20  "motions *in limine* should not be used as an excuse to file dispositive motions

21  disguised as motions *in limine*."  (Opp. at 4:26-6:10.)  Summit's motion are strictly

22  evidentiary motions.  BTL has not identified a single motion that is a dispositive

23  motion "in disguise" because there are none.

24       Finally, BTL contends – without authority – that Fed.R.Evid. 403 does not

25  apply because Summit "only stands to lose money."  (Opp. at 6:11-18.)  This

26  argument is nonsensical for a number of reasons, particularly in that its attempts to

27  make a baseless distinction between "personal property," to which BTL claims

28  Fed.R.Evid. 403 should apply, and "money," which BTL apparently posits does not

1  qualify as "personal property."

2  **III.   SUMMIT'S MOTIONS *IN LIMINE* SHOULD BE GRANTED**

3  **A.   Summit's Motion *In Limine* No. 1 To Exclude Undisclosed**
4       **Witnesses Should Be Granted**

5       Parties to a lawsuit must disclose witnesses on whom they may rely in support

6  of their claims and defenses.  Fed.R.Civ.P. 26(a)(1)(A)(i).[3]  Failure to timely and

7  properly disclose witnesses, without substantial justification or proof of

8  harmlessness, is grounds for automatic exclusion at trial.  Fed.R.Civ.P. 37(c)(1);

9  *Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, 2011 U.S. Dist. LEXIS

10  52792, at *10 (E.D. Cal. May 17, 2011); *Carson Harbor Vill., Ltd. v. Unocal Corp.*,

11  2003 U.S. Dist. LEXIS 14438, at *7 (C.D. Cal. Aug. 8, 2003).  The party facing

12  exclusion of evidence under Fed.R.Civ.P. 37 bears the burden of demonstrating

13  substantial justification or harmlessness.  *Gerawan Farming*, 2011 U.S. Dist. LEXIS

14  52792, at *11.  BTL does not dispute that it did not properly disclose the 19

15  witnesses identified in Summit's Motion *in Limine* No. 1.  Instead, BTL argues – in

16  conclusory fashion, without any evidence, without legal support, and in bullet

17  points[4] – that its violation of "Rule 26(a) was both justified and harmless."  (Opp. at

18  6:26-27.)  BTL has not met its burden with regard to either.

19       *First, BTL has offered no evidence to support a finding that it was*

20  ───────────────

21  [3]   Contrary to BTL's unsupported assertion, a party cannot withhold the identity
    of "a witness who has unfavorable information," if that party intends to rely on that
22  witness.  (Opp. at 7:4-5.)  All witnesses (except impeachment witnesses) on whom a
    party intends to rely must be disclosed.  Regardless, BTL has not identified which of
23  the 19 witnesses only have "unfavorable information," or to whom that particular
24  information is "unfavorable."

25  [4]   BTL has asserted a number of meritless arguments in bullet point to support
26  its contention that Motion *in Limine* No. 1 should be denied.  Many are nonsensical,
    unsupported or incorrect.  For the sake of brevity, Summit does not respond to each.
27  Suffice to say, Summit's failure to respond to a particular bullet point is not a
    concession that the unsupported "argument" contained therein has any merit.
28

-4-

1 | *substantially justified in failing to comply with Fed.R.Civ.P. 26(a)*.  BTL admits that

2 | "it overlooked that its initial disclosures needed to be updated and completed."

3 | (Opp. at 7:15-16.)  BTL argues that its dilatory conduct should be excused "given

4 | the Court's implementation of the Rocket Docket," which it fails to define.  (*Id.* at

5 | 7:18-19.)  The Court set the discovery cut-off and trial on August 28, 2014.  (Dkt.

6 | 54.)  BTL waited, without excuse or justification, until the close of discovery to

7 | disclose the 19 witnesses.  BTL's contention that it "overlooked" its obligations

8 | because of a purported "Rocket Docket" is insufficient to establish substantial

9 | justification.[5]  *See*, *e.g.*, *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1028 (9th

10 | Cir. 2003) (alleged "rash" of activity right before discovery cut-off insufficient to

11 | establish substantial justification under Fed.R.Civ.P. 37(c)(1)).  Regardless, BTL's

12 | contention that it "overlooked" its obligations because of the Court's purported

13 | "Rocket Docket" is also false.  BTL was well-aware of the Court's schedule when it

14 | reneged on its agreement to stipulate to an extension of all dates.  (Dkt. 61-2 at ¶¶ 5-

15 | 8, Exs. A-E.)  BTL hoped to prejudice Summit by refusing to agree to an extension.

16 | BTL's plan backfired.  Now, it pleads with the Court, again, to ignore its repeated

17 | failure to comply with its obligations and the relevant rules.

18 |      Furthermore, BTL's unsupported argument that it "had no intent to use the 19

19 | witnesses at the time it filed its initial disclosures in July 2014," is demonstrably

20 | false.  (Opp. at 9:10-12.)  As is discussed in Summit's Motion *in Limine* No. 2,

21 | documents produced by BTL mere days before the discovery cut-off demonstrate

22 | that BTL contemplated calling Bruce Nash as a witness at least as early as July

23 |

24 | [5]   BTL argues that it "supplemented its witness list only three weeks after the Court denied its motion to add seven substantive claims to its pleading."  (Opp. at

25 | 9:13-16.)  BTL does not explain why its motion to for leave to amend is relevant to

26 | the 19 witnesses it failed to disclose.  Indeed, the fact that the Court refused to allow BTL to amend its complaint to include new, meritless claims would likely lead to a

27 | reduction of the number of witnesses BTL would need to call at trial, not an

28 | increase.

1   2013.  (Dkt. at 104-1 at 7:14-8:3.)  This is only one witness.  BTL was well-aware

2   of each of the 19 witnesses it added – among them the directors, producers and press

3   agent for *Twiharder*—from the day it filed its first lawsuit in the Southern District of

4   New York in May 2013.

5          Given BTL's conduct in this (and the previous case) against Summit –

6   including, but not limited to, filing vexatious and meritless motions, refusing to

7   cooperate in discovery or in the preparation of pretrial documents, and reneging on

8   an agreement to extend all relevant deadlines and an agreement to produce its

9   principals for deposition – there can be no doubt that BTL's refusal to disclose the

10  relevant witnesses not only lacks substantial justification, but was willful and in bad

11  faith.  This Court has already found that BTL has acted in bad faith in this action.

12  (Dkt. 66.)  There is no reason to believe that BTL's failure to disclose is any

13  different, nor has BTL provided any.

14         *Second, BTL has offered no evidence to support a finding that its failure to*

15  *disclose 19 witnesses was harmless*.  Trial begins in two weeks.  Summit has been

16  deprived of the opportunity to depose the 15 non-attorney witnesses.[6]  Furthermore,

17  BTL failed to identify the witnesses' relevant knowledge rendering the scope of

18  their potential testimony unlimited.  Thus, BTL's contentions that "Summit will

19  have the full and fair opportunity to cross-examine" the 19 witnesses (4 of which are

20  or were Summit's lawyers on the matter), or that "[e]ight weeks is ample time for

21  Summit to prepare any cross-examination questions" are false.  (Opp. at 7:1-3 and

22  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [6]    BTL argues that "Summit never had the bona fide intent to take deposition in
23  this proceeding" based on its false and unsupported claim that Summit "cancelled
    every deposition that it noticed." (Opp. at 7:20-27.)  Summit served three
24  deposition subpoenas on third-parties, and noticed the depositions of BTL and its
    two principals.  Two of the third-parties (Giovanni Cuarez and Dean Cheley) signed
25  declarations obviating the need for depositions.  (Dkt. 89 at Ex. Nos. 1087 and
    1095.)  The third witnesses (Melanie Miller) objected and refused to appear.
26  Finally, as discussed in Summit's Motion *in Limine* No. 14, BTL and its principals
27  simply refused to appear at their properly-noticed depositions.  (Dkt. 117.)

28

1   8:14-17.)  BTL knows what it intends to elicit from each witness.  Summit has to

2   guess and then, on the spot at trial, attempt to undertake effective cross-

3   examinations.  Without depositions of each non-attorney witness, Summit cannot

4   properly prepare for trial.  This is the definition of "substantive [and] procedural

5   prejudice," Pet. at 7-3.  *See*, *e.g.*, *Emmpresa Cubana del Tabaco v. Culbro Corp.*,

6   213 F.R.D. 151, 159-160 (S.D.N.Y. 2003) (excluding witnesses that were not

7   properly disclosed, in part, because "[t]he prejudice is not limited to the fact that the

8   parties would have to squeeze in two depositions in the two-month period before

9   trial….  [I]t is clear that even the bare minimum of discovery required by fairness

10  would at the very least severely hamper trial preparation and likely could not be

11  completed in the two months before the trial is set to begin.").

12  **B.**      **Summit's Motion *In Limine* No. 2 To Exclude The Nash Financial
            Reports Should Be Granted[7]**

13

14          A plaintiff must disclose:

15          computation of each category of damages claimed by the disclosing
            party—who must also make available for inspection and copying as
16          under Rule 34 the documents or other evidentiary material, unless
            privileged or protected from disclosure, on which each computation is
17          based, including materials bearing on the nature and extent of injuries
            suffered.
18

19  Fed.R.Civ.P. 26(a)(1)(A)(iii); *see also Toyrrific, LLC v. Karapetian*, 2013 U.S. Dist.

20  LEXIS 54043, at *8 (C.D. Cal. Apr. 16, 2013); *Frontline Med. Assocs., Inc. v.*

21  *Coventry Health Car*, 263 F.R.D. 567, 569 (C.D. Cal. 2009).  ***Exclusion*** of

22  undisclosed damages information or documents ***is automatic*** unless the party facing

23  sanctions can prove that its failure to disclose was either justified or harmless.

24  *Estate of Gonzalez v. Hickman*, 2007 U.S. Dist. LEXIS 84390, at **7-8 (C.D. Cal.

25  _____

26  [7]      Summit's Motion *in Limine* No. 2 seeks to exclude testimony from Bruce
    Nash and the Nash Financial Reports.  Because BTL has stated that it does not
27  intend to call Mr. Nash as a witness (Opp. at 10:11-17), Summit limits its arguments
    on reply to the Nash Financial Reports.
28

1  June 28, 2007).  Exclusion is warranted "even when a litigant's entire cause of

2  action will be precluded."  *Toyrrific*, 2013 U.S. Dist. LEXIS 54043, at **8-9.  The

3  party facing exclusion under Fed.R.Civ.P. 37 bears the burden of demonstrating

4  substantial justification or harmlessness.  *Gerawan Farming*, 2011 U.S. Dist. LEXIS

5  52792, at *11.

6         BTL admits that its computation of damages is based on the Nash Financial

7  Reports, and that it intends to introduce them to establish its damages at trial.  (Opp.

8  at 10:18-20.)  However, BTL has not presented any evidence to support a finding

9  that its failure to disclose the Nash Financial Reports is substantially justified or

10  harmless.  Again, BTL instead relies on conclusory argument presented in bullet

11  points.  Again, BTL has failed to meet its burden.

12         *First, there is no evidence of substantial justification.*  BTL concedes that it

13  did not produce the Nash Financial Reports until mere days before the close of

14  discovery.  (Opp. at 11:20-22.)  BTL apparently contends that – because it allegedly

15  "disclosed the existence of the Nash [Financial] Reports to Lionsgate / Summit

16  during a full-date mediation…in September 2013" (Opp. at 11:16-19) – its failure to

17  ***actually produce*** the Nash Financial Reports is justified.  The mediation took place

18  in the first lawsuit that BTL voluntarily dismissed, which involved different

19  substantive and damages claims.  (Dkt. 66 at 1:21-2:8.)  BTL cannot rely on

20  purported statements made in a dismissed action during a settlement conference to

21  establish that its failure to produce the Nash Financial Reports is justified ***in this***

22  ***action***.  Regardless, Summit does not recall any reference to the Nash Financial

23  Reports during the September 9, 2013 mediation in the first lawsuit, and Summit

24  was not presented with the Nash Financial Reports, either before, during or after the

25  September 9 mediation.  (Pietrini Decl. ¶¶ 2-3, Ex. A.)  Indeed, even if BTL had

26  mentioned the Nash Financial Reports in the settlement conference conducted in the

27  first case, Summit would have no reason to believe that such reports would be

28  disclosed in this action because they were purportedly discussed in a settlement

-8-

1  conference.  More importantly, they were ***not*** produced in this action until weeks

2  before trial.

3      Similarly, BTL's contention about Summit's waiver of objections to the

4  admissibility of the Nash Financial Reports as a result of discovery responses (Opp.

5  at 10:3-6.) does not support a finding of substantial justification.  *See*, *e.g.*, *Naser v.*

6  *Metro. Life Ins. Co.*, 2013 U.S. Dist. LEXIS 107706, at **21-22 (N.D. Cal. July 31,

7  2013) (rejecting argument that opponent's discovery conduct "justifies delaying the

8  production of documents [sanctioned party] has an obligation to make available.").

9  BTL has not identified the alleged discovery responses and, regardless, Summit has

10  not waived any objections to the Nash Financial Reports.

11      *Second, BTL has not established that its failure to disclosure the Nash*

12  *Financial Reports is harmless*.  Notwithstanding BTL's unsupported arguments, it is

13  clear that the Nash Financial Reports are the subject of expert testimony.  (Dkt. 104-

14  1 at 13:13-15:10, 122 at 13:15-15:16.)  Both BTL and Mr. Nash admit that his

15  "financial projections" are based on proprietary analytic models and information.

16  (*Id*.)  BTL admits that the Nash Financial Reports, and its damages claims, are Mr.

17  Nash's "estimate" of gross revenues of allegedly "comparable" films based on their

18  "worldwide exploitation of a seven-year period."[8]  (Dkt. 102 at 21:20-23.)  Neither

19  Mr. Nash nor BTL have ever explained how these estimates were determined, why

20  the allegedly comparable films were chosen, or where Mr. Nash obtained the

21  information underlying his estimates.  (*See*, *e.g.*, Dkt. 122 at 13:15-19:18.)  By

22  intentionally withholding Mr. Nash's identity, BTL has robbed Summit of its

23  _____

24  [8]    Thus, contrary to BTL's assertions, BTL intends to introduce Mr. Nash's
estimates of purported box office revenue, not a particular "motion picture's
25  financial performance at the box office," which BTL argues, without support, "is
26  widely reported in mainstream media and are matters of common knowledge within
the everyday experience of objective observers."  (Opp. at 11:9-15.)  Regardless,
27  these allegedly "widely reported" box office revenues are inadmissible for multiple
28  reasons, as set forth in Summit's Motion *in Limine* No. 8.  (Dkt. 110-1.)

-9-

1  statutorily-provided opportunity to test Mr. Nash's methodology, his "estimates,"

2  and the data underlying them through deposition and the retainer of its own experts.

3  *See*, *e.g.*, *Estate of Gonzalez*, 2007 U.S. Dist. LEXIS 84390, at **26-27 (C.D. Cal.

4  June 28, 2007) ("Even were Defendants to depose Hunt, moreover, this would not

5  cure the prejudice they have suffered.  Deposing Hunt will not enable Defendants to

6  challenge, with documentary evidence or rebuttal expert testimony, the numerous

7  assumptions underlying her calculation of Gonzalez's lost earnings potential. As a

8  result, exclusionary sanctions pursuant to Rule 37(d)(1) are warranted.").

9       BTL now states that Mr. Nash refuses to appear at trial.  (Opp. at 10:11-17.)

10  Therefore, Summit ***will not*** "have the opportunity to discredit or challenge the [Nash

11  Financial Documents]" and the "estimates" contained therein at trial.  (Opp. at 10:8-

12  10.)  Even if Mr. Nash were appearing at trial, the extreme prejudice to Summit

13  warrants exclusion of Mr. Nash and the Nash Financial Reports.  *See*, *e.g.*,

14  *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 786 (7th Cir. 2000) ('Without even

15  a preliminary or draft supplemental expert witness report from [the expert],

16  NutraSweet was greatly hampered in its ability to examine him about his analysis of

17  the site work.  In these circumstances, the use of the 'automatic' sanction of

18  exclusion was not an abuse of discretion.' (citations omitted)).  We affirm the

19  decision to exclude Vuckovich's testimony.").

20       BTL's "requests" for sanctions, other than exclusion, should be disregarded.

21  BTL has failed to prove that its failure to disclose was substantially justified or

22  harmless.  (Opp. at 12:1-13.)  Exclusion is, therefore, automatic.  Furthermore,

23  BTL's requests are meritless.  BTL's "request" for additional discovery should be

24  ignored.  The Court has already denied multiple timely requests for an extension of

25  discovery.  To grant one now, the Court would need to continue the trial, and

26  provide Summit with an opportunity to depose Mr. Nash and retain and disclose its

27  own experts.  This is unfeasible.

28       Similarly, BTL's request for a "limiting instruction" should be disregarded.

1   BTL has not identified a "limiting instruction" that would remedy its failure to

2   disclose the Nash Financial Reports or provide the jury with a basis from which to

3   use Mr. Nash's "estimates" to determine a damages award.  (*See*, *e.g.*, Dkt. 122 at

4   18:5-19:8.)

5          BTL's final "request" for a "bench trial on issues raised by the Nash

6   [Financial Documents]" is nonsensical, contradicts BTL's demand for a jury trial in

7   its complaint (Dkt. 1), BTL's memorandum of contentions of law and fact (Dkt. 86

8   at 24:15 (damages for prima facie tort are "triable to the jury")), and BTL's

9   unilateral pretrial conference order (Dkt. 118-1 ("The trial is to be a jury trial"), and

10  flies in the face of BTL's contention that its Seventh Amendment right to a jury trial

11  "trumps" the rules of evidence and civil procedure.  BTL's third request – like the

12  others – should be disregarded.  Summit's Motion *in Limine* No. 2 should be granted

13  in its entirety.[9]

14       **C.**   **Summit's Motion *In Limine* No. 3 To Exclude Evidence Of**
         **Settlement Communications Should Be Granted**
15

16         Evidence of "conduct or a statement made during compromise negotiations

17  about the claim" is inadmissible to "prove or disprove the validity of a disputed

18  claim or to impeach by a prior inconsistent statement or contradiction."  Fed.R.Evid.

19  408.  BTL contends that it does not seek to introduce settlement correspondence to

20  "prove or disprove the validity of Summit's copyright or trademark claims," but

21  instead to prove "the element of 'disinterested malevolence' to support BTLP's

22  *prima facie* tort claim."  (Opp. at 14:15-19.)  The settlement correspondence is

23  inadmissible for this purpose.

24  ───────────────
    [9]    Even if the Court refuses to exclude the Nash Financial Reports for BTL's
25  unjustified and prejudicial failure to disclose pursuant to Fed.R.Civ.P. 37, they
    should still be excluded.  As is discussed fully in Summit's Motion *in Limine* No. 8,
26  which BTL has not opposed, the Nash Financial Reports are irrelevant, misleading
    and prejudicial, constitute inadmissible expert opinion, and are inadmissible
27  hearsay.  (Dkt. 110-1.)
28

1    To establish its prima facie tort claim, BTL must prove that Summit's sole

2 intent in asserting it claims was to maliciously harm BTL.  *Twin Labs., Inc. v.*

3 *Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990).  BTL claims that the

4 settlement correspondence establishes this intent, but fails to state how.  BTL does

5 not allege that Summit ever explicitly stated in any letter that its intent in asserting

6 its rights was to injure BTL.  (*See*, *e.g.*, Dkt. 102 at 5:5-13:8.)  Instead, BTL hopes

7 to introduce statements made during settlement discussions – statements that only

8 relate to Summit's copyright and trademarks claim – to create an inference of

9 malicious intent.  To do so, however, BTL must demonstrate that Summit's

10 contentions with regard to its copyright and trademark claims were objectively

11 baseless.  It is impossible for the factfinder to determine whether the letters are

12 objectively baseless without considering the merits of the positions expressed

13 therein regarding Summit's copyright and trademark claims, and BTL's defense of

14 fair use.  More importantly, BTL admits that it wants to use settlement

15 communication to establish an element of its prima facie tort claim.  Fed.R.Evid.

16 408 expressly excludes the use of settlement correspondence for these purposes.

17    This distinguishes BTL's purported use of the settlement correspondence

18 from the uses in the authority it cites.  In that authority, settlement correspondence is

19 used to prove the commission of the wrongful act – "libel, assault, breach of

20 contract, unfair labor practice, and the like" – not as evidence of some ultimate fact

21 (here, malicious intent) that a plaintiff must prove.  (Opp. at 13:6-16.)

22 Unsurprisingly then, in contrast to the cases cited by BTL in its opposition, there is

23 other, better evidence of Summit's purported intent that BTL failed to seek.  For

24 example, it is clear that the only and best evidence of negotiations of a settlement

25 agreement ***in action for breach of that settlement agreement*** would be statements

26 made during those settlement negotiations.  *See Coakley & Williams Constr., Inc. v.*

27 *Structural Concrete Equipment, Inc.*, 973 F.2d 349 (4th Cir. 1992) (determining

28 scope of release in settlement "[T]he pleadings language makes the scope of the

1 release ambiguous, which requires us to look to extrinsic evidence of the parties'

2 intent to resolve that ambiguity.  At oral argument, C & W conceded that the only

3 extrinsic evidence of the parties' intent is C & W's settlement offer.") (internal

4 citations omitted).[10]  By way of contrast, BTL could have solicited direct evidence

5 of Summit's purported intent from Summit itself.  BTL failed to do so.  BTL did not

6 notice any depositions or seek any written discovery about Summit's purported

7 intent.  BTL cannot use excludable settlement correspondence to create an inference

8 of malicious intent – by asking the jury to evaluate Summit's positions with regard

9 to its copyright and trademark claims – to prove something it should have attempted

10 to prove through direct evidence obtain through discovery.

11         **D.**     **Summit's Motions *In Limine* Nos. 4-14 Should Be Granted**

12       BTL has failed to provide any substantive opposition to Summit's Motion *in*

13 *Limine* Nos. 4-14, instead contending that the motions are intended to "Harass [*sic*]

14 BTLP and do not warrant serious consideration."  (Opp. at 15:13-14.)  True to its

15 word, BTL fails to seriously consider Summit's Motion *in Limine* Nos. 4-14 and

16 contends, in total, that "ALL of the evidence submitted by BTLP is relevant to its

17 claims and defenses and should be submitted to the Jury pursuant to the Seventh

18 Amendment."  (Opp. at 15:14-15.)  Because BTL has failed to oppose Summit's

19 Motion *in Limine* Nos. 4-14, they should be granted.  *See*, *e.g.*, *Feinberg-Tomahawk*

20 *v. City & County of San Francisco*, 2014 U.S. Dist. LEXIS 104194, at **3-4 (N.D.

21 Cal. July 28, 2014) (party's failure to file an opposition is grounds for granting the

22 motion).  *See also* L.R. 7-9.

23       Furthermore, a review of Summit's motions makes it clear that they are not

---

24   [10]    *See also Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362-363 (8th Cir. 2000)

25 (claim for bad faith breach of contract under South Dakota law; evidence of

26 statement made during settlement treated as direct evidence of "bad faith" because "[u]nder South Dakota law, an insurer's attempt to condition the settlement of a

27 breach of contract claim on the release of a bad faith claim may be used as evidence

28 of bad faith.").

1  intended to "harass," but instead intended to exclude the voluminous irrelevant,

2  hearsay, prejudicial and otherwise inadmissible evidence that BTL continues to

3  contend it will introduce at trial.  This includes:  (1) Motion *in Limine* No. 4 to

4  exclude testimony by Summit's counsel (including trial counsel) on the grounds that

5  it is unnecessary, harassing and invades the attorney-client privilege; (2) Motion *in*

6  *Limine* No. 5 to exclude evidence related to the alleged liability of former defendant

7  Lions Gate; (3) Motion *in Limine* No. 6 to exclude irrelevant and hearsay statements

8  from the author of the *Twilight* books; (4) Motion *in Limine* No. 7 to exclude

9  hearsay, opinion evidence about the purported themes in the *Twilight* films; (5)

10  Motion *in Limine* No. 8 to exclude evidence of allegedly "comparable" films; (6)

11  Motion *in Limine* No. 9 to exclude evidence of alleged "public condemnation of

12  Summit's IP enforcement"; (7) Motion *in Limine* No. 10 to exclude evidence of

13  irrelevant evidence of third-party Warner Brother Digital Distribution's purported

14  "industry background"' (8) Motion *in Limine* No. 11 to exclude hearsay, opinion

15  evidence to establish that *Twiharder* is a legal parody; (9) Motion *in Limine* No. 12

16  to exclude evidence of BTL's voluntarily withdrawn antitrust claims; (10) Motion *in*

17  *Limine* No. 13 to exclude the voluminous irrelevant and hearsay evidence included

18  on BTL's portions of the joint exhibit list; and (11) Motion *in Limine* No. 14 to

19  preclude BTL from calling itself or its principals at trial because of their refusal to

20  appear for properly-noticed depositions.  Each motion *in limine* is meritorious for

21  the reasons identified therein, and they should be granted.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1   **IV.   CONCLUSION**

2         For the above reasons, and the reasons set forth in the motions, Summit's

3   Motions *in Limine* No. 1-14 should be granted in their entirety.

4                   Respectfully submitted,

5                   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

6

7   Dated:  November 10, 2014   By: /s/ Jill M. Pietrini

8                                     Jill M. Pietrini

9                                     Attorneys for Defendant and Countertclaimant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-15-

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3        At the time of service, I was over 18 years of age and **not a party to this
**action**.  I am employed in the County of Los Angeles, State of California.  My
4   business address is 1901 Avenue of the Stars, Suite 1600, Los Angeles, CA 90067-
6055.

5

        On November 10, 2014, I served true copies of the following document(s)
6   described as **DEFENDANT AND COUNTERCLAIMANT SUMMIT
ENTERTAINMENT, LLC'S CONSOLIDATED REPLY BRIEF IN
7   SUPPORT OF MOTIONS *IN LIMINE* NOS. 1-14** on the interested parties in this
action as follows:

8

9   James H. Freeman, Esq.                    Steve Lowe, Esq.
    J.H. Freeman Law                          LOWE & ASSOCIATES, P.C.
10  3 Columbus Circle, 15 FL                  11400 Olympic Boulevard, Suite 640
    New York, NY 10019                        Los Angeles, CA  90064
11  Tel:  (212) 931-8535                      Tel:  (310) 477-5811
    Fax:  (212) 496-5870                      Fax:  (310) 477-7672
12  iames@ihfreemanlaw.com                    steve@lowelaw.com

13

        **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed
14  the document(s) with the Clerk of the Court by using the CM/ECF system.
Participants in the case who are registered CM/ECF users will be served by the
15  CM/ECF system.  Participants in the case who are not registered CM/ECF users will
be served by mail or by other means permitted by the court rules.

16

        I declare under penalty of perjury under the laws of the United States of
17  America that the foregoing is true and correct and that I am employed in the office
of a member of the bar of this Court at whose direction the service was made.

18

        Executed on November 10, 2014, at Los Angeles, California.

19

20

                                        /s/ Latrina Martin
21                                      Latrina Martin

22

23  SMRH:434741674.1

24

25

26

27

28

-16-