SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JILL M. PIETRINI (Cal. Bar No. 138335)
jpietrini@sheppardmullin.com
PAUL A. BOST (Cal. Bar No. 261531)
pbost@sheppardmullin.com
BENJAMIN O. AIGBOBOH (Cal. Bar No. 268531)
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone: (310) 228-3700 / Facsimile: (310) 228-3701

Attorneys for Defendants and
Counterclaimant

FILED
CLERK, U.S. DISTRICT COURT
OCT 30 2014
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BETWEEN THE LINES PRODUCTIONS, LLC a California limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> LIONS GATE ENTERTAINMENT CORP., a British Columbia corporation, and SUMMIT ENTERTAINMENT, LLC, a Delaware limited liability company, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS. | Case No. 2:14-cv-00104-R (PJWx) <br><br> [~~PROPOSED~~] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW RE DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION <br><br> Date: October 20, 2014 <br> Time: 10:00 a.m. <br> Ctrm: 8 <br> Judge: Hon. Manuel L. Real <br><br> Complaint filed: Dec. 16, 2013 <br> Trial Date: Nov. 25, 2014 |

Defendant Lions Gate Entertainment Corp. ("Lions Gate") and Defendant and Counterclaimant Summit Entertainment, LLC ("Summit") (collectively, "Defendants") having moved for summary adjudication on September 22, 2014 (Dkt. 71), which motion came for hearing on October 20, 2014, the Court finds that the following facts are uncontroverted and makes the conclusions of law set forth below.

## I. STATEMENT OF UNCONTROVERTED FACTS

| | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 1. | Since at least as early as 1991, Summit and its predecessors have been active participants in the motion picture industry. Summit has produced and distributed films and related entertainment products, and has also been involved in motion picture financing, production, and distribution services. | Dkt. 71-2 (Dkt. 71-2) ¶ 2. |
| 2. | Summit is the producer and distributor of the successful and famous motion picture *Twilight* and its equally successful and famous sequels, namely, *The Twilight Saga: New Moon* ("*New Moon*"), *The Twilight Saga: Eclipse*, *The Twilight Saga: Breaking Dawn - Part 1*, and *The Twilight Saga: Breaking Dawn - Part 2* (collectively, the "*Twilight* Motion Pictures"). Summit is the sole owner of the copyrights associated with the *Twilight* Motion Pictures. | Dkt. 71-2 (Kimbrough Decl.) ¶ 2. |
| 3. | Summit – not Lions Gate – is the owner of the trademark TWILIGHT in block letters and in distinctive stylized font (the "stylized TWILIGHT mark"), the trademark THE TWILIGHT SAGA, and other marks including the term TWILIGHT including, but not limited to the mark TWIHARD (collectively the "TWILIGHT Marks"). | Dkt. 71-2 (Kimbrough Decl.) ¶ 4. |

| | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 4. | Summit – not Lions Gate – is the copyright owner of the publicity, promotional, unit, and special shoot photography relating to the *Twilight* Motion Pictures. | Dkt. 71-2 (Kimbrough Decl.) ¶ 7, Ex. B. |
| 5. | Summit is the copyright owner in promotional posters for *New Moon* depicting the characters Edward, Jacob, and Bella (the "New Moon Poster") and characters from *New Moon* known as the "Wolfpack" (the "Wolfpack Poster"). | Dkt. 71-2 (Kimbrough Decl.) ¶ 7, Ex. B. |
| 6. | Summit is the copyright owner for a promotional poster for *Eclipse* depicting the characters Edward, Bella, and Jacob (the "Eclipse Poster"). | Dkt. 71-2 (Kimbrough Decl.) ¶ 7, Ex. B. |
| 7. | Summit registered its copyright ownership in the New Moon Poster with the U.S. Copyright Office on November 6, 2009, which was granted Registration No. VA 1-689-491. | Dkt. 71-2 (Kimbrough Decl.) ¶ 7, Ex. B. |
| 8. | Summit registered its copyright ownership in the Wolfpack Poster with the U.S. Copyright Office on November 6, 2009, which was granted Registration No. VA 1-689-492. | Dkt. 71-2 (Kimbrough Decl.) ¶ 7, Ex. B. |
| 9. | Summit registered its copyright ownership in the Eclipse Poster with the U.S. Copyright Office on June 25, 2011, which was granted Registration No. VA 1-778-457. | Dkt. 71-2 (Kimbrough Decl.) ¶ 7, Ex. B. |
| 10. | Summit – not Lions Gate – owns the copyrights in the *Twilight* Motion Pictures themselves. | Dkt. 71-2 (Kimbrough Decl.) ¶ 8, Ex. C. |
| 11. | Summit has licensed its copyrighted photographs to third parties to promote the *Twilight* Motion Pictures, as well as for use on clothing and other products related to the *Twilight* Motion Pictures and/or bearing the TWILIGHT mark. | Dkt. 71-2 (Kimbrough Decl.) ¶ 9. |

| | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 12. | Summit owns copyrights in various other photographs and artwork associated with and derived from the *Twilight* Motion Pictures. | Dkt. 71-2 (Kimbrough Decl.) ¶ 5. |
| 13. | Lions Gate is a corporation organized under the laws of British Columbia, Canada. Summit, an indirect wholly-owned subsidiary of Lions Gate, is a Delaware limited liability company. Summit is a separate and distinct entity from Lion Gate. Summit maintains distinct corporate books and bank accounts. Summit collects its own revenues. Lions Gate and Summit conduct separate board meetings and maintain separate corporate minutes. Lions Gate and Summit generally have separate corporate officers and directors. Summit enters into contracts on its own behalf. Lions Gate is generally not a party to the contracts that Summit enters. Lions Gate does not supervise the day-to-day affairs of Summit. | Dkt. 80-1 (Supp. Kimbrough Decl.) ¶¶ 5-6. |
| 14. | Between the Lines Productions, LLC ("BTL") BTL produced a motion picture entitled *Twiharder*. | Dkt. 1 ¶ 169. |
| 15. | To promote *Twiharder*, BTL uses the word "Twiharder" and a stylized "Twiharder" logo. | Dkt. 16 at 28:22-31:28, Ex. E. |
| 16. | BTL promotes *Twiharder* on a website on the domain name <www.twiharder.com>, which features, among other things, promotional artwork and trailers for and music videos related to *Twiharder*. | Dkt. 16 at 28:22-31:28, Ex. E. |
| 17. | BTL distributes through its website and other channels posters and other artwork to promote *Twiharder*, many of which intentionally approximate Summit's promotional materials for *New Moon* and *Eclipse*, including the Wolfpack Poster and Eclipse Poster. | Dkt. 16 at 28:22-31:28, Ex. E. |

| | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 18. | BTL offers for sale digital downloads of its promotional materials, as well as other artwork, on its website. | Dkt. 16 at 28:22-31:28, Ex. E. |
| 19. | BTL has also offered for sale and sold, without Summit's authorization, various types of merchandise – including clothing, hats, beverageware, coasters, notebooks, and tote bags – bearing the TWIHARDER mark and promotional artwork related to *Twiharder*. | Dkt. 16 at 28:22-31:28, Ex. E. |
| 20. | BTL alleges that there was significant interest in international distribution for *Twiharder*. | Dkt. 71-3 (Bost Decl.) ¶ 7, Ex. F at p.4. |
| 21. | BTL claims that, in or around April 2012, it was offered a license agreement for distribution of *Twiharder* by Gravitas Ventures, which indicated its intent to pitch *Twiharder* to Gravitas Ventures' distribution partner Warner Brothers Digital Distribution. | Dkt. 71-3 (Bost Decl.) ¶ 7, Ex. F at ¶¶ 215-226. |
| 22. | BTL also claims that, in or around June 2012, it was offered errors and omissions ("E & O") insurance by Chubb Insurance. | Dkt. 71-3 (Bost Decl.) ¶ 7, Ex. F at p.5 and ¶¶ 232-241. |
| 23. | On June 27, 2012, and shortly after it became aware of *Twiharder*, Summit – not Lions Gate – sent BTL a cease-and-desist letter related to *Twiharder*. On July 12, 2012, BTL responded to Summit's cease-and-desist letter. BTL and Summit thereafter exchanged further correspondence debating the merits of their respective positions. | Dkt. 16 at 28:22-24, 32:21-25, Ex. F; Dkt. 71-3 (Bost Decl.) ¶ 7, Ex. F at ¶ 253. |
| 24. | On December 20, 2012, Summit representatives and its counsel convened with BTL's counsel for a screening of *Twiharder* in an attempt to settle their dispute. | Dkt. 16 at 32:26-33:6. |

| | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 25. | According to BTL, within days of receiving Summit's June 27, 2012 cease-and-desist letter, BTL's purported distributor (Gravitas Pictures) and potential insurer (Chubb Insurance) revoked their distribution and insurance offers to BTL. In particular, BTL claims that it was notified that Chubb Insurance revoked its offer for E&O insurance on July 16, 2012 and that Gravitas Ventures conditionally revoked its offer for distribution on July 24, 2012. | Dkt. 71-3 (Bost Decl.) ¶ 7, Ex. F at p.5 and ¶¶ 254-259. |
| 26. | On May 28, 2013, BTL filed a 219-page "Anti-Trust Complaint" (1,300+ pages with exhibits) against Defendants in the Southern District of New York (the "First Lawsuit"). | Dkt. 71-3 (Bost Decl.) ¶ 7, Ex. F. |
| 27. | On June 28, 2013, Defendants filed a motion to transfer venue of the First Lawsuit to the Central District of California under 28 U.S.C. § 1404. | Dkt. 71-3 (Bost Decl.) ¶ 8; Dkt. 66. |
| 28. | On July 30, 2013, Judge Jed Rakoff of the Southern District of New York granted Defendants' motion to transfer, and the First Lawsuit was transferred and assigned to the Hon. Margaret M. Morrow. | Dkt. 71-3 (Bost Decl.) ¶ 9; Dkt. 66. |
| 29. | After the First Lawsuit was transferred, Defendants filed a motion to dismiss BTL's antitrust, trademark cancellation, and DMCA claims. | Dkt. 71-3 (Bost Decl.) ¶ 10; Dkt. 66. |
| 30. | On October 2, 2013, BTL filed a 186-page First Amended Complaint pursuant to FRCP 15(a)(1)(B), in which it voluntarily dismissed its trademark cancellation and DMCA claims, but continued to assert its antitrust and declaratory judgment claims. | Dkt. 71-3 (Bost Decl.) ¶ 11. |

| | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 31. | Defendants filed a second motion to dismiss on October 22, 2013, which again sought dismissal of Plaintiff's antitrust claim, and set hearing for December 2, 2013. BTL never filed an opposition. | Dkt. 71-3 (Bost Decl.) ¶ 12; Dkt. 66. |
| 32. | Instead, BTL launched a series of vexatious and meritless filings. BTL also refused to comply with its discovery obligations, forcing Defendants to file a motion to compel. | Dkt. 71-3 (Bost Decl.) ¶ 13; Dkt. 66. |
| 33. | While Defendants' motion to compel was pending, and after each of BTL's filings was denied, BTL voluntarily dismissed the First Lawsuit without prejudice pursuant to FRCP 41(a)(1) on December 13, 2013, the day its opposition to Defendants' second motion to dismiss was due. | Dkt. 71-3 (Bost Decl.) ¶ 14; Dkt. 66. |
| 34. | On December 16, 2013, BTL filed the present action in the Southern District of New York (the "Second Lawsuit"). | Dkt. 1 and 66. |
| 35. | The very next business day, December 16, 2013, BTL re-filed its lawsuit – the present action – in the Southern District of New York (the "Second Lawsuit"). | Dkt. 71-3 (Bost Decl.) ¶ 3, Ex. B; Dkt. 66. |
| 36. | On January 6, 2014, Judge Rakoff *sua sponte* transferred the action – again – to the Central District of California. | Dkt. 71-3 (Bost Decl.) ¶ 3, Ex. B; Dkt. 66. |
| 37. | Despite BTL's refusal to serve Defendants with a copy of its Complaint, Defendants, on January 27, 2014, filed their Answer and Summit's Counterclaims. | Dkt. 16 and 66. |
| 38. | On March 10, 2014, BTL filed an unmeritorious motion to dismiss Summit's Counterclaims. | Dkt. 24 and 44. |

| | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 39. | On June 25, 2014, BTL filed its Answer to Summit's Counterclaims, in which it acknowledged its intent to raise "counterclaims against Summit's counterclaims." | Dkt. 45. |
| 40. | On August 1, 2014, BTL filed a motion for leave to amend and, on August 18, 2014, BTL lodged its 135-page proposed First Amended Complaint. | Dkt. 48, 51 and 66. |
| 41. | On September 15, 2014, the Court issued an Order Denying Plaintiff's Motion for Leave to file an Amended Complaint. On September 19, 2014, the Court issued an Order Denying Plaintiff's Motion for Leave to file an Amended Complaint. In the Order, the Court found that, in the First Lawsuit, BTL had "refused to comply with discovery," "filed a series of vexatious and meritless filings" and voluntarily dismissed the First Lawsuit "ostensibly to avoid an adverse ruling" on Defendants' motion to dismiss BTL's antitrust claims. The Court also found that, in the Second Lawsuit, BTL had acted in bad faith to "unnecessarily drag out these proceedings" and "to increase the costs of litigation to Defendants." | Dkt. 66. |

II. **CONCLUSION OF LAW**

A. **Summary Judgment Standard**

Pursuant to FRCP 56(a), a party may move for summary judgment or summary adjudication, "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed.R.Civ.P. 56(a). Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91

L. Ed. 2d 202, 211 (1986). An issue of material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 553 (1986).

Summary judgment, therefore, is mandated where the non-moving party fails to sufficiently establish the existence of an element essential to its claim or defense and on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986). In such a case, "[t]here can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. The moving party is not required to negate its opponent's claim; instead, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Summary judgment "dispose[s] of factually unsupported claims or defenses." *Id.* at 323-24. A summary judgment motion "cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also In re Lewis*, 97 F.3d 1182, 1187 (9th Cir. 1996). To survive summary judgment, the nonmovant must produce some "significant probative evidence" to support its claim. *Lewis*, 97 F.3d at 1187.

**B. Lions Gate Is Entitled To Summary Adjudication**

    **1. Lions Gate Is Entitled To Summary Adjudication On Count I (Non-Infringement) And Court II (Non-Infringement/Non-Dilution) Of BTL's Complaint**

Lions Gate is not a proper party to Counts I and II. There is no genuine dispute of material fact as to whether Summit – not Lions Gate – owns all of the copyrights, trademarks and service marks in, and related to, the *Twilight* Motion

Pictures that are at issue in this matter. Accordingly, Lions Gate is entitled to summary adjudication on Count I (Non-Infringement) and Count II (Non-Infringement/Non-Dilution) of BTL's complaint.

### 2. Lions Gate Is Entitled To Summary Adjudication On Count III (Prima Facie Tort) In BTL's Complaint

A parent company will not be held liable for the torts of its subsidiary unless it can be shown that the parent exercises complete dominion and control over the subsidiary." *Serrano v. N.Y. Times Co.*, 19 A.D.3d 577, 578 (N.Y. App. Div. 2d Dep't 2005); *see also Billy v. Consol. Mach. Tool Corp.*, 51 N.Y.2d 152, 163 (N.Y. 1980) (parent liability may only be imposed where, "[a]t the very least, there [is] direct intervention by the parent in the management of the subsidiary to such an extent that 'the subsidiary's paraphernalia of incorporation, directors and officers are completely ignored.'"). The only evidence BTL has cited is its assertion that David C. Friedman, Esq. and Robert Mason, Esq. were copied on the parties' correspondence related to *Twiharder*. This evidence is insufficient to find that Lions Gate "exercises complete dominion and control" over Summit or that Lions Gate even authorized, ratified or approved the correspondence or its contents. Accordingly, there is no genuine dispute of material fact as to whether Lions Gate is liable for the alleged torts of its subsidiary Summit and, therefore, Lions Gate is entitled to summary adjudication on Count III (Prima Facie Tort).

### C. Summit Is Not Entitled To Summary Adjudication On Count III (Prima Facie Tort) In BTL's Complaint

Under New York law, it is not settled that prima facie tort claims are subject to a one-year or three-year statute of limitations.[1] *See, e.g., Evans*, 2012 U.S. Dist.

---

[1] In its motion for summary adjudication, Summit asserted that it sought summary adjudication of BTL's claim for prima facie tort on statute of limitations grounds. In its reply in support of its motion for summary adjudication, Summit asserted additional grounds for summary adjudication. Because it is improper to

LEXIS 109849, at **26-27 n. 14 (recognizing "conflict in New York State law as to which statute of limitations should be applicable" to prima facie tort claims, but refusing to resolve where plaintiff alleged lost wages and benefits allegedly suffered as a result of termination of plaintiff's employment); *Havell v. Islam*, 739 N.Y.S.2d 371, 372 (N.Y. App. Div. 1st Dep't 2002) ("A claim for damages for intentional tort, including a tort not specifically listed in *CPLR* 215(3), is subject to a one-year limitation period…and where, as here, a reading of the factual allegations discloses that the essence of the cause of action is an intentional tort, plaintiff cannot avoid a statute of limitations bar by labeling the action as one to recover damages for prima facie tort.") (internal citations omitted). Regardless, under New York law, "a cause of action accrues when an actionable injury has been suffered…that is, 'when all elements of the tort can be truthfully aligned in a complaint.'" *Marine Midland Bank v. Renck*, 195 A.D.2d 871, 873 (3d Dep't 1993). Here, there is a dispute of material fact as to when BTL's prima facie tort cause of action accrued. Summit contends that it accrued in July 2012, when BTL learned that its offers for distribution and insurance had been revoked. BTL contends that its cause of action for prima facie tort accrued in April 2013, at which time it came to understand that Summit's conduct was motivated by alleged "disinterested malevolence." Accordingly, there is a genuine dispute of material fact as to whether BTL's claims for prima facie tort is barred by the statute of limitations and, therefore, summary adjudication on Count III (Prima Facie Tort) is not appropriate.

### D. Summit Is Entitled To Summary Adjudication On BTL's First, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, Eleventh, Fourteenth, Sixteenth, Seventeenth And Eighteenth Defenses

#### 1. Summit Is Entitled To Summary Judgment On BTL's First Defense (Failure To State A Claim)

---

raise new arguments on reply for the first time, the Court declines to consider the additional grounds set forth in Summit's reply.

"Failure to State a Claim" is not a valid affirmative defense. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."); *Joe Hand Prom., Inc. v. Estrada*, 2011 U.S. Dist. LEXIS 61010, at *5 (E.D. Cal. June 7, 2011) ("Failure to state a claim is an assertion of a defect in Plaintiff's prima facie case, not an affirmative defense."); *Barnes v. AT&T Pension Benefit Plan*, 718 F. Supp.2d 1167, 1174 (N.D. Cal. 2010) (same). Because "failure to state a claim" is not a valid affirmative defense, summary adjudication is proper.

  **2. Summit Is Entitled To Summary Judgment On BTL's Fourth Defense (Waiver/Forfeiture)**

BTL has not introduced any evidence in support of its Fourth Defense (Waiver/Forfeiture). Accordingly, summary adjudication is proper.

  **3. Summit Is Entitled To Summary Judgment On BTL's Fifth Defense (Estoppel)**

BTL has not introduced any evidence in support of its Fifth Defense (Estoppel). Accordingly, summary adjudication is proper.

  **4. Summit Is Entitled To Summary Judgment On BTL's Eighth Defense (Illegality)**

BTL has not introduced any evidence in support of its Eighth Defense (Illegality). Accordingly, summary adjudication is proper.

  **5. Summit Is Entitled To Summary Judgment On BTL's Ninth Defense (Acquiescence)**

BTL has not introduced any evidence in support of its Ninth Defense (Acquiescence). Accordingly, summary adjudication is proper.

  **6. Summit Is Entitled To Summary Judgment On BTL's Tenth Defense (License)**

BTL has not introduced any evidence in support of its Tenth Defense (License). Accordingly, summary adjudication is proper.

  **7. Summit Is Entitled To Summary Judgment On BTL's Eleventh Defense (Assumption of Risk)**

BTL has not introduced any evidence in support of its Eleventh Defense (Assumption of Risk). Accordingly, summary adjudication is proper.

### 8. Summit Is Entitled To Summary Judgment On BTL's Fourteenth Defense (Preemption)

BTL failed to address its Fourteenth Defense (Preemption) in its opposition to Summit's motion for summary adjudication. Accordingly, summary adjudication is proper.

### 9. Summit Is Entitled To Summary Judgment On BTL's Sixteenth Defense (Invalidity)

BTL failed to address its Sixteenth Defense (Invalidity) in its opposition to Summit's motion for summary adjudication. Accordingly, summary adjudication is proper.

### 10. Summit Is Entitled To Summary Judgment On BTL's Seventeenth Defense (Independent Creation)

In its opposition, BTL withdrew its Seventeenth Defense (Independent Creation). Accordingly, summary adjudication is proper.

### 11. Summit Is Entitled To Summary Judgment On BTL's Eighth Defense (Improper Transfer Of Venue Under 28 USC 1404(a))

In its opposition, BTL withdrew its Eighteenth Defense (Improper Transfer Of Venue Under 28 USC 1404(a)). Accordingly, summary adjudication is proper.

### E. Summit Is Not Entitled To Summary Adjudication On BTL's Second (Laches) And Third (Statute Of Limitation) Defenses

To establish laches, BTL must prove that: (a) Summit delayed in bringing suit; (b) Summit alleged delay was unreasonable; and (c) BTL was prejudiced by the alleged delay. *Internet Specialties West, Inc. v. Milon-Digiorgio Enters.*, 559 F.3d 985, 990 (9th Cir. 2009).

To establish its affirmative defense of "Statute of Limitations," BTL must show that each of Summit's claims are barred by the relevant limitations period. The statute of limitations for state trademark infringement and claims brought under the Lanham Act is four years from the date the plaintiff knew or in the exercise of

1  reasonable care would have known of the violation. *See Miller*, 318 F. Supp.2d at
2  942 n. 11 (stating there is a four-year statute of limitations period for violations of
3  state trademark infringement and dilution). The statute of limitations for statutory
4  unfair competition law is four years from the date of discovery. *See* Cal. Bus. &
5  Prof. Code § 17208; *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1192-96
6  (2013). The statute of limitations for common law unfair competition law is two
7  years from the date of discovery. *Garcia v. Coleman*, 2008 U.S. Dist. LEXIS
8  68672, *26 (N.D. Cal. Sept. 8, 2008). Lastly, the statute of limitations for copyright
9  infringement is three years from the time the plaintiff knew of the violation.
10 17 U.S.C. § 507; *Roley v. New World Pictures*, 19 F.3d 479, 481 (9th Cir. 1994).

Here, there is dispute of material fact as to when Summit knew or should have known of BTL's conduct. Summit contends that it did not become aware of BTL's conduct until November or December 2011. BTL alleges it published its allegedly infringing materials between February 2010 and December 2010, and that Summit knew or should have known about BTL's allegedly infringing conduct at that time. Thus, there is a factual dispute as to the date that Summit first knew or should have known of BTL's allegedly infringing conduct. Accordingly, summary adjudication cannot be granted at this time.

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated: October 23, 2014      By: /s/ Jill M. Pietrini
                                 Jill M. Pietrini

Attorneys for Defendants and Counterclaimant

*Read, studied*

*10-30-14*